## 200 ASSOCIATES, LLC *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF THOMPSON (AC 24116)

Foti, Flynn and Stoughton, Js.

---

168

Argued February 26—officially released June 1, 2004

*John D. Boland,* with whom, on the brief, was *William H. St. Onge,* for the appellant (defendant).

*Robin Messier Pearson,* for the appellee (plaintiff).

*Opinion*

STOUGHTON, J. Certification to appeal having been granted, the defendant, the planning and zoning commission of the town of Thompson (commission),

appeals from the judgment of the trial court sustaining the appeal by the plaintiff, 200 Associates, LLC, from the decision by the commission to deny a subdivision application.[1] On appeal, the commission claims that the court improperly (1) substituted its judgment for that of the commission and failed to defer to the commission's interpretation of the town's cul-de-sac regulation, and (2) determined that the commission's denial of the open space designation in the application was unlawful and arbitrary. We agree with the conclusion of the trial court as to the first issue. We reverse the judgment of the trial court as to the second issue and remand the case for further proceedings on that issue.

The following facts are relevant to our resolution of the issues in this appeal. The plaintiff applied to the commission for approval of a thirty-one lot subdivision on a tract of 56.65 acres located in the town of Thompson. The subdivision included a street 3165 feet in length to be known as Elizabeth Circle. The proposed road runs from Thatcher Road and forms a large circle, or loop, and intersects with itself at what appears to be about 800 feet from its intersection with Thatcher Road.[2] Inside the circle, there are eight building lots, and there are building lots on the outside of the circle. Traffic is permitted to flow both clockwise and counterclockwise around the loop.

The commission denied the subdivision application and set forth six reasons.[3] The plaintiff appealed, and

[1] The court heard testimony that the plaintiff was the owner of the land and therefore was aggrieved. See General Statutes § 8-8. That finding has not been challenged on appeal.

[2] See accompanying appendix, a reproduction of the plot plan showing Elizabeth Circle.

[3] The reasons for the denial of the plaintiff's application were: "1. The proposed new road is a cul de sac and exceeds 1000 feet; 2. There is no available Department of Transportation approval; 3. No approval from Water Pollution Control Authority; and 4. The proposed road exceeds the length of Thatcher Road; 5. The Commission does not accept the open space area; and 6. Concerns with the proposed drainage."

the court sustained the appeal, finding that the commission had acted unreasonably or arbitrarily in denying the application and that the subdivision plans complied with the Thompson subdivision regulations. The commission challenges the trial court's decision with respect to only two of the six reasons given for the denial by the commission, and the first of those was the principal issue at the hearing on the plaintiff's application.

The first reason for the denial was that the proposed new road, Elizabeth Circle, is a cul-de-sac and exceeds 1000 feet. The Thompson subdivision regulations do not define the term "cul-de-sac," but § XIII D.1.d provides that a cul-de-sac shall not exceed 1000 feet in length.[4] The commission claims that the court improperly construed the applicable zoning regulations and substituted its judgment for that of the commission in determining that Elizabeth Circle was not a cul-de-sac.

The fifth reason given by the commission was that it did not accept the plaintiff's proposal of land to be designated as open space in the subdivision. Section VII of the Thompson subdivision regulations addresses open space requirements.[5] The commission claims that

---

[4] Section XIII D.1.d of the Thompson subdivision regulations provides: "Cul-de-sac shall not exceed 1,000 feet in length. This length shall be measured from the centerline of the street to be intersected by the cul-de-sac to the mid point of the turn-around."

[5] Section VII of the Thompson subdivision regulations provides in relevant part: "A. *The land so reserved shall be chosen by the Commission* for the purpose of conserving natural or scenic resources; protecting cultural, historic or archeological resources, including but not limited to flood plains, streambelts, wetlands, ponds, aquifers, stone walls, specimen trees exceeding 30' dbh (diameter breast height), wildlife habitat, outstanding forests, ridges, ravines, and ledge outcroppings and other unusual or fragile features; conserving prime and important farmland soils as defined by the Soil Conservation Service; meeting recreational needs of present and projected populations in the area; adding to or creating linkages between existing open space; providing buffer areas between adjoining land uses; implementing the recommendations of the Thompson Open Space Plan.

"B. A subdivision or resubdivision of any tract of land which results in the creation of 12 or more lots shall reserve open space in an appropriate

the court improperly concluded that the commission applied its power unlawfully and arbitrarily by merely rejecting the plaintiff's open space proposal and by concluding that it failed to exercise its regulatory authority to designate the open space. Additional facts will be set forth as necessary.

I

The commission first claims that the court improperly substituted its judgment for that of the commission and failed to defer to the commission's interpretation of the cul-de-sac regulation. At the outset, we set forth our standard of review. "It is axiomatic that a planning commission, in passing on a [subdivision] application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations. . . . The commission is entrusted with the function of interpreting and applying its zoning

location for the purpose envisioned by the Commission at the rate of one acre per five lots for public use, except as otherwise provided for in these regulations, as amended. *The requirement for open space being dedicated within a subdivision shall be at the option of the Commission.*

\* \* \*

"[2. A.] The subdivider may employ, or the Commission may require, that Open Spaces be provided by one of the following mechanisms, as the Commission finds appropriate: 1. Dedication of land to the Town of Thompson. The Commission may accept in a form and manner prescribed by these Regulations, Open Space dedicated perpetually to the Town, or Open Space protected by a Conservation Easement, provided that it determines the public interest would be served by such dedication. *However, the Commission is not bound to accept Open Space when it deems such acceptance is inappropriate.* In making its determination it shall consider, among other things, the relationship of the Open space to the Plan of Development, access to and use of the Open Space to [and] by the general public, and restrictions of and purposes of the Open Space. Final acceptance of land to be dedicated to the Town is through a Town meeting. 2. Dedication of land to the State of Connecticut as State Park and forest land. 3. Provision of a Conservation Easement with full, limited, or prohibited public access. 4. Provision of private Open Space, such as common land held by an association of homeowners. 5. By conveyance to a non-profit organization dedicated to this conservation of natural Open Space." (Emphasis added.)

regulations. . . . The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts. . . . The plaintiffs have the burden of showing that the commission acted improperly. . . . The trial court can sustain the [plaintiff's] appeal only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal . . . . It must not substitute its judgment for that of the . . . commission and must not disturb decisions of local commissions as long as honest judgment has been reasonably and fairly exercised. . . . It is an appellate court function to determine whether the judgment of the trial court was clearly erroneous or contrary to the law; appellate review excludes the retrial of the facts. . . . The Appellate Court does not determine whether the trier of facts could have reached a conclusion other than the one reached. It looks both at the conclusion reached and the method by which it was reached to determine whether that conclusion is correct and factually supported." (Citations omitted; internal quotation marks omitted.) *Gorman Construction Co.* v. *Planning & Zoning Commission*, 35 Conn. App. 191, 195–96, 644 A.2d 964 (1994); see also *Property Group, Inc.* v. *Planning & Zoning Commission*, 226 Conn. 684, 696–97, 628 A.2d 1277 (1993); R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.8, pp. 173–77.

We seek to determine the intent of the local legislative body as manifested in the words of the regulation; however, as zoning regulations are in derogation of common-law property rights, "the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms." (Internal quotation marks omitted.) *Balf Co.* v. *Planning & Zoning Commission*, 79 Conn. App. 626, 636, 830 A.2d 836, cert.

denied, 266 Conn. 927, 835 A.2d 474 (2003). The words employed are to be interpreted in accordance with their natural and usual meaning, and doubtful language will be construed against rather than in favor of a restriction. Id. With the foregoing principles in mind, we turn to the commission's claim.

At the hearing on the plaintiff's application, much of the discussion centered on whether Elizabeth Circle was a cul-de-sac. The commission's chairman expressed the view that it was a cul-de-sac because it was open at one end only. He said that when the regulations were written, the plan was to limit the length of a street with only one opening to 1000 feet, and a cul-de-sac is a street with only one opening. Counsel for the plaintiff opined that Elizabeth Circle was not a cul-de-sac because there is no turnaround, there are two intersections and there is no closed end.

Because the term "cul-de-sac" is not defined in the regulations, the parties agree that the term should be given its common and ordinary meaning. It is a French term, which freely translates as tail end of the bag. The parties agree that it is commonly used to describe a street closed at one end. The trial court cited a definition from a publication submitted by the commission entitled "Definitions of Surveying and Associated Terms," which was prepared by a joint committee of the American Congress on Surveying and Mapping and the American Society of Civil Engineers. The publication defines a cul-de-sac street as a dead-end street that widens sufficiently at the end to permit an automobile to make a U-turn.[6] The court also referred to several dictionary definitions of a cul-de-sac. From all of those sources, it is clear that a cul-de-sac is a blind alley or a street open at one end only, or a street closed at one end,

[6] Additionally, we note that all of the diagrams depicting a circular cul-de-sac show traffic flowing solely in a counterclockwise direction.

usually with a turnaround at the closed end, which does not describe Elizabeth Circle, a loop road that allows traffic to flow in two directions, and does not require that a vehicle be turned around and driven back along its length in order to return to Thatcher Road.

A term that is employed in the regulations may not be interpreted to mean whatever the commission chooses it to mean. That would render it impossible for a party to discern the true meaning of the term and, thus, to know whether compliance with the regulation is possible. We have stated that "[s]ubdivision regulations cannot be too general in their terms and must contain known and fixed standards that apply to all similar cases. . . . A commission's regulations must be reasonably precise in subject matter and reasonably adequate and sufficient to give both the commission and those affected by its decision notice of their rights and obligations." (Citation omitted.) *Sowin Associates* v. *Planning & Zoning Commission*, 23 Conn. App. 370, 376, 580 A.2d 91, cert. denied, 216 Conn. 832, 583 A.2d 131 (1990); see also *Pelliccione* v. *Planning & Zoning Commission*, 64 Conn. App. 320, 335, 780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2001). If it is not otherwise defined, a word has its usual and customary meaning, and may not be construed to include that which is not clearly within its terms.[7] The commission construed cul-de-sac to include a loop road configuration, which is not clearly within the ordinary meaning of the term. We agree with the trial court that Elizabeth Circle is not a cul-de-sac, as that term

---

[7] General Statutes § 1-1 (a) provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." See also *State* v. *Indrisano*, 228 Conn. 795, 809, 640 A.2d 986 (1994) ("[i]f a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary").

is ordinarily and usually employed. Accordingly, we conclude that the court properly sustained the plaintiff's appeal as to that issue.

## II

The commission next claims that the court improperly determined that the commission's denial of the open space designation was unlawful and arbitrary. Specifically, the commission argues that the court improperly interpreted the regulation and that the commission was not required either to accept the plaintiff's open space proposal or to provide an alternative. We agree with the commission.

As a preliminary matter, we set forth the proper standard of review and applicable legal principles that govern our resolution of the issue. The issue concerns an interpretation of the Thompson subdivision regulation. Accordingly, our review is plenary. See *Balf Co.* v. *Planning & Zoning Commission*, supra, 79 Conn. App. 635. "Thus, we must determine whether the conclusions reached by the court are legally and logically correct and supported by the facts in the record." Id.

The open space proposed on the plans for the subdivision consisted of 13.4 acres, which exceeded the requirement in the regulations that, for the proposed subdivision, was 6.2 acres. In its memorandum of decision, the court noted that after the public hearing, the members of the commission discussed the fact that open space can be accepted in any form that the commission chooses. The court, obviously referring to that part of the regulations[8] that states that "[t]he land so reserved shall be chosen by the Commission for the purpose of conserving . . . resources," concluded that the commission did not exercise its regulatory authority to designate the open space; instead, it merely rejected

---

[8] See footnote 5.

the application. That, the court concluded, was an unlawful and arbitrary exercise of its power.

Essentially, the court concluded that once the commission chose not to accept the open space as offered by the plaintiff, the commission was obligated to determine an appropriate location to satisfy the regulations. In failing to do so, the court ruled that the commission acted in an unlawful and arbitrary manner. Our review of § VII of the Thompson subdivision regulations reveals that the commission was not obligated to accept the open space as designated by the plaintiff. Additionally, the town did not have to accept ownership of it. The minutes of the hearing reflect the concern of the commission members over potential liabilities that might come with ownership.[9] Although the regulations provide that land reserved for open space shall be cho-

---

[9] The following colloquy occurred at the December 17, 2001 hearing on the plaintiff's subdivision application:

"[Commission member John Rice]: It's going to be the town's responsibility to maintain that, then?

"[Civil engineer Janet Blanchette]: That's correct. It's part of the open space, and it's part of, part of the formal letter . . . .

"[Rice]: What's part of the open space, this?

"[Blanchette]: This one. This area here is part of the open space. This is an open space, and this is an open space.

"[Commission member Charles Paquette]: Now, quite frankly . . . the town has not yet accepted any open space land. . . . I think accepting any open space land . . . would have to go through a town meeting, to do so. . . . *[I]n the past, we've urged other people to assign this land to . . . an association owed by . . . people that buy lots in the subdivision and they would maintain it, as they do in other towns, not something that's a burden to the town for insurance problems and maintenance problems, and so on and so forth.*

"[Civil-engineer Dennis Blanchette]: Well, we, we understand that it's your open right to decide. We do not . . . (inaudible) the proposal. We thought it made sense to contribute the open space to the town, given the location of it, but we realize that ultimately, if you [ask] us to look at alternate mechanisms, we will do that. . . .

"[Rice]: Myself, personally, I'd like to see the alternate, one of the alternates, would be, is to relocate this open space, when you indicated previously that, you know, it's next to town owned property." (Emphasis added.)

sen by the commission for the purpose of conserving and protecting resources, they require that a developer of a subdivision reserve open space and permit the developer to use one of five methods that the commission finds appropriate. There is no requirement in the Thompson subdivision regulations that the commission must attempt to designate open space in the subdivision after it rejects a proposed open space reservation. We agree with the commission that the developer would not be apt to accept such a designation without at least some consultation. The developer must reserve open space and may elect one of several methods to submit the designation to the commission for its approval. Thus, the court improperly concluded that the commission was obligated either to accept the open space as provided in the plaintiff's application or to designate an appropriate area of open space if it rejects the plaintiff's proposal.

The question that remains is whether there was sufficient evidence before the commission for it to reject the plaintiff's application on the basis of the open space issue.[10] The commission merely stated that it did "not accept the open space area . . . ." "When a commission states its reasons in support of its decision on the record, the court goes no further, but if the commission has not articulated its reasons, the court must search the entire record to find a basis for the [commission's]

---

[10] "In appeals from administrative zoning decisions, the commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . *The [commission's] decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given.* . . . The evidence . . . to support any such reason [however] must be substantial . . . ." (Emphasis added; internal quotation marks omitted.) *Evans* v. *Planning & Zoning Commission,* 73 Conn. App. 647, 658, 808 A.2d 1151 (2002); see also *Property Group, Inc.* v. *Planning & Zoning Commission,* supra, 226 Conn. 697.

decision." (Internal quotation marks omitted.) *Azzarito* v. *Planning & Zoning Commission,* 79 Conn. App. 614, 618, 830 A.2d 827, cert. denied, 266 Conn. 924, 835 A.2d 471 (2003).

In this case, the court never searched the record. Instead, it focused on the issue of whether the commission, after rejecting the plaintiff's open space proposal, was required to select an alternate location. We have concluded that such a determination by the court was improper. The appropriate remedy, therefore, is to remand the matter to the trial court so that it may fulfill its obligation to search the record and to determine if the record reveals substantial evidence to support the denial of the plaintiff's application on the open space issue. See *Paige* v. *Town Plan & Zoning Commission,* 235 Conn. 448, 464–65, 668 A.2d 340 (1995); *Gagnon* v. *Inland Wetlands & Watercourses Commission,* 213 Conn. 604, 611–12, 569 A.2d 1094 (1990).

The judgment is reversed in part and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

# APPENDIX