JOHN A. FANOTTO, JR., ET AL. *v.* INLAND
WETLANDS COMMISSION OF THE
TOWN OF SEYMOUR
(AC 28405)

Flynn, C. J., and Beach and Hennessy, Js.

Argued February 14—officially released June 3, 2008

*Matthew Ranelli*, with whom, on the brief, was *Lewis R. Whitehead*, for the appellants (plaintiffs).

*Timothy J. Lee*, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiffs, John A. Fanotto, Jr., and Anna Fanotto, appeal from the judgment of the trial court dismissing their appeal from the denial by the defendant, the inland wetlands commission of the town of Seymour (commission), of their application for a wetlands permit so that they could build a subdivision on their property. The issue presented in this appeal is whether the court properly concluded that the commission had adequate support for the denial of the application to conduct regulated activities on the property when the uncontroverted expert testimony and reports showed that there would be minimal impact to the wetlands. We reverse the judgment of the trial court and remand the case with direction to render judgment sustaining the plaintiff's appeal and ordering the commission to approve the application with reasonable conditions consistent with this opinion.[1]

---

[1] See *Thorne* v. *Zoning Commission*, 178 Conn. 198, 206, 423 A.2d 861 (1979) (in zoning appeals when as matter of law there was one conclusion zoning authority reasonably could reach, court may direct administrative agency to do or to refrain from doing what conclusion legally requires).

The following facts and procedural history are relevant to the plaintiffs' appeal. The plaintiffs own a 20.37 acre parcel zoned R-18 in Seymour on which they wanted to create a twenty lot subdivision. The parcel includes 5.1 acres of wetlands, 3.6 acres of which are encompassed in 4.1 acres of land proposed for dedication as open space. The plaintiffs submitted the application at issue on March 2, 2004, and the commission deemed it to be a complete application. The commission first heard from the plaintiffs at its March 22, 2004 meeting, at which time " 'a site walk/special meeting/public hearing' " was scheduled for April 10, 2004.[2] Consultant and wetlands scientist Robert Jontos was introduced by the plaintiffs at the March 22, 2004 meeting and was able generally to present the impact the subdivision would have on the wetlands. The commission next heard from the plaintiffs at its April 26, 2004 meeting. The commission unanimously voted to classify the property as having a "possible significant impact on the wetlands and watercourses." The commission then requested the plaintiffs' permission to have various agencies perform soil tests, which the plaintiffs did not oppose. The May 17, 2004 public hearing on the application was not attended by the plaintiffs. Instead,

---

[2] The commission claims that the public hearing for the plaintiffs' application was not opened until the May 17, 2004 meeting; the record, however, clearly shows that the commission classified this first site walk as a public hearing and published notice of this meeting in the local newspaper as such. See General Statutes § 22a-42a. Pursuant to General Statutes § 8-7d (a), "a hearing . . . held on such petition, application, request or appeal . . . shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty-five days after such hearing commences . . . ." Under § 22a-42a (c) (1), if the inland wetlands agency fails to act within the time limits under that section or § 8-7d, an applicant may file his or her application with the commissioner of environmental protection, which the plaintiffs did in this case. Failure of the inland wetlands agency to act within the statutory time limitations does not constitute approval of the application. General Statutes § 22a-42a; R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed.1999) § 23.4, p. 531.

their counsel sent a letter stating that the plaintiffs were of the opinion that the commission had failed to act on the application in a timely fashion and that the plaintiffs were forwarding the application to the department of environmental protection. Owners of land adjoining the subject property attended the May 17, 2004 public hearing and voiced concern about the application and the impact to the wetlands. The public hearing was continued until May 24, 2004, where more laypersons spoke in opposition to the application. The public hearing was closed, and the commission unanimously denied the application. The reasoning for the denial of the application is encompassed in the minutes of the meeting.[3]

The plaintiffs appealed from the decision of the commission to the Superior Court, arguing that there was no substantial evidence to support the commission's denial of their application, especially in light of the expert testimony. The court found that the commission had "actual knowledge of the area involved" and that the maps included with the application showed that twelve of the twenty lots proposed were affected by the proximity of the wetlands. Overall, the court held that the knowledge gained by the commission through personal observation of the area encompassed by the application was properly considered in reaching the decision that the construction would have an adverse effect on the wetlands. The court also held that no evidence was necessary to make a credibility determination about the expert's testimony, nor was the commission required to believe the expert. Accordingly, the court dismissed the plaintiffs' appeal. The plaintiffs then filed the present appeal after this court granted their petition for certification to appeal.

[3] The return of record is missing the transcripts from the May 17 and 24, 2004 meetings. The record shows that counsel for both parties attempted to locate the tapes of the meeting but were unsuccessful. From our review of the record, the meeting minutes from both of the public hearings are adequate to resolve the legal issue before this court.

We begin by setting forth the applicable standard of review. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 576, 800 A.2d 1102 (2002). "The court is limited to a review of the evidence and reasoning the agency has placed on the record. Agency decisions must be sustained if the record reveals substantial evidence in support of any reason given." *Bradley* v. *Inland Wetlands Agency*, 28 Conn. App. 48, 52, 609 A.2d 1043 (1992). "In appraising the sufficiency of this record, the court must determine only whether there was substantial evidence which reasonably supported the administrative decision, since [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Internal quotation marks omitted.) *Feinson* v. *Conservation Commission*, 180 Conn. 421, 425, 429 A.2d 910 (1980). The party challenging the agency decision has the burden to show that "substantial evidence does not exist in the record as a whole to support the agency's decision." *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 587, 628 A.2d 1286 (1993). The substantial evidence test requires a substantial basis in fact that an actual adverse impact to the wetlands or watercourses will result from the proposed activities and that the defendant's decision must be supported by more than a possibility of that adverse impact. *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 70–80, 848 A.2d 395 (2004).

"Judicial review of administrative process is designed to assure that administrative agencies act on evidence which is probative and reliable and act in a manner

consistent with the requirements of fundamental fairness. From both perspectives, we are compelled to conclude that a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view." *Feinson* v. *Conservation Commission*, supra, 180 Conn. 429. "Evidence of general environmental impacts, mere speculation, or general concerns do not qualify as substantial evidence." *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, supra, 269 Conn. 71. "The determination of what constitutes an adverse impact on the wetlands is considered to be a technically complex issue." *Milardo* v. *Inland Wetlands Commission*, 27 Conn. App. 214, 222, 605 A.2d 869 (1992).

With this in mind, we must look to what evidence we may consider. "[T]he general rule is that information may not be considered by board members which has not been presented at the public hearing itself." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 407. "When an inland wetlands agency grants, denies or limits any permit for a regulated activity, it is required to state upon the record the reasons for its decision. On review, the court determines whether the express reasons given for denial are based upon the agency's regulations and whether they are reasonably supported by evidence in the record. . . . If none of the reasons given by the agency are properly supported by substantial evidence, then the agency's denial of the application will be overturned." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 33:9, pp. 271–72. "Although the commission would have been entitled to deny an application because it did not believe

the expert testimony . . . the commission had the burden of showing evidence in the record to support its decision not to believe the experts—i.e., evidence which undermined either the experts' credibility or their ultimate conclusions." *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 156–57, 653 A.2d 798 (1995). "If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings." *Feinson* v. *Conservation Commission*, supra, 180 Conn. 428–29.

We begin our analysis by setting forth the information that was presented before the commission. At the March 22, 2004 meeting, the plaintiffs' expert, Jontos, presented the proposed plan by explaining what type of intrusion would be on the wetlands. He explained the proposal to improve the watershed areas in terms of direct and indirect impacts. He stated that direct impacts are actual physical intrusions into the wetlands or watercourses and indirect impacts are discharge, with one example of it being storm water activity. He stated that the direct impacts in the plan were a total of two driveways that would cross an intermittent watercourse to enter three building lots and utilities installed near the driveways. The other direct impact would be from the upgrading of the existing road running through the property. The indirect impacts would be the discharge of storm water in some of the areas, which would be addressed by upgrading and instituting systems to direct the runoff and to "provide for stabilization of this area." He asserted that the improvements to the existing system would have a stabilizing effect as well as promote increased diversity for additional wildlife habitats. The commission voted during this

meeting to have a site walk on April 10, 2004, and invited the public so that it would be a public hearing as well.

From the minutes and transcripts of the April 26, 2004 special meeting and public hearing, it is apparent that a silent walk through occurred on April 24, 2004, with three of the commission members "to review wetland delineation markers on the parcel of land." The plaintiffs submitted an updated environmental report with an expanded wildlife section and added the expert's resume to the record. Upon questioning by the commission, Jontos explained the process of conducting a soil survey, that the soil tests were complete and that the survey that was submitted was "intensive." A member then suggested that other agencies be asked to come and perform surveys on the site, to which the plaintiffs did not object. Jontos still requested that the commission be polled to find out its areas of interest so that he could address its concerns and questions at the next public hearing. The commission did not think that it could give a list, however, until it conferred with other agencies. The chairman of the commission stated that the commission would contact the agencies that it would like to have survey the site.[4] The meeting ended with the plaintiffs' counsel stating that the clock was running on the application and the chairman stating that if the commission did not have all the information at the end of the statutory time period, the commission had the right to reject the application.

In the minutes of the May 17, 2004 public hearing, the commission read the letter from the plaintiffs' counsel into the record. The letter informed the commission that the plaintiffs were not going to attend the meeting because they were of the opinion that the commission

---

[4] There is no documentation in the record showing that the commission made any contact with any other agency to perform such surveys, and no survey results were presented while the public hearing was open.

had not acted on the application in a timely fashion and that they were taking their application to the department of environmental protection. Owners of adjoining property spoke at this meeting opposing the application. Some property owners without any demonstrated expertise in wetlands wrote letters that are available in the record. One property owner wrote about trees that had been cut down on the property. He also asked whether there was a spring or storm water on the property because water appeared to be draining into the Globe Mill Brook, which runs along the proposed subdivision. Another property owner wrote a letter about how much she enjoyed the Globe Mill Brook and that she thought that the development would ruin it.

According to the minutes of the May 24, 2004 public hearing, more property owners spoke in opposition, but again, none of the speakers was shown to have any expertise. The commission then moved to go into executive session. After that, a regular meeting was called to order, and the plaintiffs' application was rejected without prejudice. The minutes reflect that a commission member "stated that the purpose of the commission is to conserve and maintain the quality of the wetlands and watercourses by preventing and reducing any reduction of their quality. The commission has followed the rule of law by requesting pertinent information from the applicant that is needed by this board to reach a decision on his project. This commission held a special meeting site walk and, because of poor flagging and identification on the wetland borders, held a second silent site walk with two members and the applicant. It was very evident to this board from our previous experience that this site with steep slopes, heavy seepage, watercourses, and breakout soils constituted a definite potential for a significant impact during and after construction of this project. Neighbors' concerns were also weighed in the decision to classify this

application as requiring a public hearing. The applicant did not submit soil tests or maps that were complete or clear to this board and chose not to attend the special public hearing on May 17, 2004, to address the concerns for the commissioners or the public on these matters."

An extensive review of the record reveals that there was no credible evidence presented during the public hearings to rebut the findings of the plaintiffs' expert. The commentary against the development was set forth by individuals with no apparent expertise in any field relevant to the specialized determination of adverse impacts to wetlands. Cf. *Milardo* v. *Inland Wetlands Commission*, supra, 27 Conn. App. 222. It is evident from the commission's statement regarding the denial of the application that the commission, without any claimed expertise, relied on its knowledge without an opportunity for the plaintiffs to rebut the evidence. The commission never requested information from the plaintiffs that went unanswered, as claimed in the statement. When asked by the plaintiffs' expert for such concerns so that he could prepare a rebuttal, the commission stated that it would need to confer with experts first, but no experts were ever consulted. Although the commission was correct in stating that the plaintiffs did not attend the May 17, 2004 public hearing, there were no outstanding questions from the commission that the plaintiffs had to answer, and they were exercising their statutory right to take the application to the department of environmental protection. The commission's assertion that the plaintiffs did not present complete or clear soil maps was wholly unsupported by the record because there was extensive discussion on the record about the soil maps, and the commission's concerns regarding the maps during the hearings were baseless.[5] Overall, the plaintiffs have shown that no

---

[5] The record demonstrates that the commission members misplaced the soil maps, then found them. The commission then questioned the plaintiffs on where and with whom the maps were filed. Once the plaintiffs explained

substantial evidence exists in the record to support the commission's decision to deny the application. They have further shown through credible expert testimony that there is minimal intrusion into the wetlands and there are improvements to the stability of the property; therefore, the only reasonable conclusion for the commission to reach would be to grant the application with reasonable conditions.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiffs' appeal and directing the commission to approve the application with reasonable conditions.

In this opinion the other judges concurred.

how the soil maps were properly filed, there was no further comment about it. There was then some discussion about who created the soil maps, but once the plaintiffs informed the commission on the subject, again, there was no further comment. Ultimately, all questions the commission had were answered to members' satisfaction. There was no further discussion.