KING'S HIGHWAY ASSOCIATES ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF NORTH HAVEN
(AC 29441)

Harper, Lavine and Robinson, Js.

Argued January 12—officially released May 19, 2009

*John A. Parese,* with whom was *Chris R. Nelson,* for the appellant (defendant).

*Stephen G. Murphy, Jr.,* for the appellees (plaintiffs).

### Opinion

LAVINE, J. The defendant, the planning and zoning commission of the town of North Haven (commission), appeals from the judgment of the trial court rendered after it sustained the appeal of the plaintiffs, King's Highway Associates, Valley View Associates and Michael K. Murphy, from the commission's denial of

their resubdivision application (application).[1] On appeal to this court, the commission claims that the trial court improperly (1) concluded that the commission lacked authority to consider the water supply for the resubdivision and (2) substituted its judgment for that of the commission with respect to (a) a drainage plan and (b) the need for sidewalks in the plaintiff's proposed resubdivision. We affirm the judgment of the trial court.

The following facts are not in dispute. The plaintiffs are the owners of 15.88 acres of real property (land) at 320 King's Highway in North Haven (town), an R-40 zone.[2] Subdivision applications concerning the land have been before the commission on several prior occasions. In 1998, King's Highway Associates proposed a thirteen lot subdivision. After meeting with the commission's staff, King's Highway Associates proposed a nine lot subdivision, which the commission approved. When approval of the nine lot subdivision expired, the plaintiffs submitted two more nine lot subdivision proposals, which the commission denied. On November 8, 2005, the plaintiffs submitted the application to create two lots. The application called for a house to be constructed on lot one only[3] and for an existing structure on the northwest corner of the land to be removed. The commission held a hearing on the application on

[1] Section 1.3 of the North Haven subdivision regulations provides in relevant part: "resubdivision: as defined in the General Statutes, shall mean 'a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map.' "

[2] An R-40 zone permits the development of lots with a minimum of 30,000 square feet.

[3] The application proposed two lots on the land. Lot one, rectangular in shape, contains approximately 0.92 acres with 160 feet bordering on King's Highway. Lot two is a U-shaped parcel of approximately 14.96 acres surrounding lot one. Lot two has two segments totaling 800 feet adjacent to King's Highway.

February 6, 2006, and continued the matter until March 6, 2006, when it unanimously denied the application. The commission gave three reasons for the denial: the plan did not provide for sidewalks, it did not provide for drainage, and the water main did not extend across the entire length of the land bordering on King's Highway.

The plaintiffs appealed to the trial court, claiming that the commission had acted illegally, arbitrarily and in abuse of its discretion by denying the application because the subdivision regulations do not require the plaintiffs to install a water main across the entire length of land adjacent to King's Highway or to install sidewalks on both sides of King's Highway, and because there was no evidence that the proposed resubdivision would result in any drainage problems. The court sustained the appeal, concluding that the commission lacked jurisdiction to consider the water main extension, there was no evidence of a drainage problem, the sidewalk regulations were ambiguous, and requiring sidewalks on both sides of King's Highway led to an unreasonable result that unfairly restricted the plaintiffs' use of the land. This court granted the commission's petition for certification to appeal.

I

The resolution of the commission's appeal requires us to construe the town's zoning regulations, a question of law to which the plenary standard of review applies. See *Fedus* v. *Zoning & Planning Commission*, 112 Conn. App. 844, 848, 964 A.2d 549 (2009).

A municipality's authority to regulate the subdivision of land comes from the state. General Statutes § 8-25 (a) provides in relevant part: "No subdivision of land shall be made until a plan for such subdivision has been approved by the commission. . . . Before exercising the powers granted in this section, the commission shall

adopt regulations covering the subdivision of land. . . . Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety, that proper provision shall be made for water, sewerage and drainage . . . ." See *Property Group, Inc.* v. *Planning & Zoning Commission*, 226 Conn. 684, 690–91, 628 A.2d 1277 (1993) (§ 8-25 directs municipalities to regulate land to be subdivided).

"[Z]oning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." (Internal quotation marks omitted.) *Fedus* v. *Zoning & Planning Commission*, supra, 112 Conn. App. 848. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006).

An appellate court seeks "to determine the intent of the local legislative body as manifested in the words of the regulation; however, as zoning regulations are in derogation of common-law property rights, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms." (Internal quotation marks omitted.) *200 Associates, LLC* v. *Planning & Zoning Commission,* 83 Conn. App. 167, 172, 851 A.2d 1175, cert. denied, 271 Conn. 906, 859 A.2d 567 (2004). "Ordinarily, [appellate courts afford] deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *Fedus* v. *Zoning & Planning Commission,* supra, 112 Conn. App. 848–49.

A subdivision application is subject to the commission's administrative authority. "A municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency . . . ." (Internal quotation marks omitted.) *Pansy Road, LLC* v. *Town Plan & Zoning Commission,* 283 Conn. 369, 375, 926 A.2d 1029 (2007). "The commission is entrusted with the function of interpreting and applying its zoning regulations. . . . The trial court must determine

whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts. . . . The plaintiffs have the burden of showing that the commission acted improperly. . . . The trial court can sustain the [plaintiffs'] appeal only upon the determination that the decision of the commission was unreasonable, arbitrary or illegal . . . . It must not substitute its judgment for that of the . . . commission and must not disturb decisions of local commissions as long as honest judgment has been reasonably and fairly exercised. . . . It is an appellate court function to determine whether the judgment of the trial court was clearly erroneous or contrary to the law; appellate review excludes the retrial of the facts. . . . The Appellate Court does not determine whether the trier of facts could have reached a conclusion other than the one reached. It looks both at the conclusion reached and the method by which it was reached to determine whether that conclusion is correct and factually supported." (Internal quotation marks omitted.) *200 Associates, LLC* v. *Planning & Zoning Commission*, supra, 83 Conn. App. 171–72.

"Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. . . . The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. . . . The evidence, however, to support any such reason must be substantial . . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it

affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Citations omitted; internal quotation marks omitted.) *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 198–99, 635 A.2d 1220 (1994).

II

The commission's first claim is that the court improperly concluded that the commission lacked authority to consider the manner in which water was supplied to the land. The court concluded that the regional water authority is the agency designated to address issues concerning water supply. We agree with the court.

The court stated that the controlling statute is General Statutes § 7-148 (c), which provides in relevant part: "Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the Constitution and general statutes . . . (4) . . . (G) Provide for the furnishing of water, by contract or otherwise . . . ." The town's subdivision regulations provide in relevant part: "All subdivision plans shall make proper provision for water supply, and lots which are not served by a public water supply system shall be large enough and so laid out to allow a distance of not less than [seventy-five] feet between any well used for such purpose and any portion of any sewage disposal." North Haven Subdivision Regs., § 3.3. Moreover, the regulations provide, in relevant part: "In the case of subdivisions served by public water supply, all necessary mains, branch offsets, fire hydrants and other necessary appurtenances shall be installed as approved by the municipal department and the corporation having jurisdiction." Id., § 3.8. Lot one is to be supplied with public water service.

The court formulated the issue as whether the commission had the power to deny the plaintiffs' application because it failed to show a water main extension across the entire length of the land on King's Highway, a distance of 960 feet. The length of lot one adjacent to King's Highway is approximately 160 feet. The court noted that the commission conceded in its brief that "there is no provision in the [town's] subdivision regulations that explicitly requires the extension of the water main at issue . . . across the entire frontage of the subdivision tract." The commission also acknowledged that the municipal corporation referred to in § 3.8 of the town's subdivision regulations is the South Central Connecticut Regional Water Authority (water authority). The water authority was created by the General Assembly through Special Acts 1977, No. 77-98, for the "primary purpose of providing and assuring the provision of an adequate water supply of pure water at reasonable cost within the South Central Connecticut Regional Water District." The town is in the water authority's district.

The plaintiffs placed the water authority's regulations in evidence before the court. The court noted the following relevant regulations: "I. DEFINITIONS . . . 'Extension'—the linear footage of main required in order to service property(ies) according to the terms and conditions set forth by these rules. . . . II. GENERAL PRINCIPLES . . . 2. An extension is under the sole control and jurisdiction of the Authority. . . . 10. The Authority will determine the required length, size, material, routing and location of an extension, based in general on the following principles . . . (b) Extensions installed in streets within a . . . subdivision will include all mains required to cover buildings to be served by the . . . subdivision to intersecting streets." Regional Water Authority, Rules, Regulations & Rates

Governing The Extension of Water Mains (Rev. February 19, 1998) pp. 1, 3. The court concluded that the water authority is the agency that is designated to address issues concerning water supply and water main extensions and that the commission, therefore, had no authority to deny the application. The application indicates that the existing water supply reaches lot one, which is the one to be developed. To require the plaintiffs to extend the water main beyond that basic requirement exceeds the town's regulations, which designate that the water authority has jurisdiction over those issues.

Moreover, the court found that the water authority is the agency charged with protecting the town's interest in supplying water. "A land use agency acting upon an administrative application should review it based upon its own regulations and whether the application meets them. Compliance or non-compliance with the regulations of another agency is not a proper consideration, and that should be left for the other agency to decide if and when an application is made to it for the same property." R. Fuller, 9 Connecticut Practice Series: Land Use law and Practice (3d Ed. 2007) § 21.5, pp. 608–609.

The court also concluded that even if the commission had authority to require the plaintiffs to extend the water main along the land adjacent to King's Highway, such an extension was not necessary for any rational purpose stated in the subdivision regulations. There is no dispute that the existing water supply reaches the southern portion of lot one. That is the concern that § 3.3 of the subdivision regulations permits the commission to address. The court found no evidence, let alone substantial evidence, on which the commission could rely in denying the application for failing to extend the water main along all of the land adjacent to King's

Highway. The court concluded that to require the plaintiffs to construct a water main on land where no development was planned would place an unjustified burden on the plaintiffs' right to make use of their land. To the extent that an extension of the water main would benefit neighboring property owners, the court concluded that such a requirement was inappropriate.

On the basis of our plenary review of the relevant regulations and the record, we conclude that the court properly determined that the commission lacked authority to require the plaintiffs to construct a water main across the land adjacent to King's Highway. The plain language of the subdivision regulations makes clear that the means of supplying water to the land falls within the purview of the water authority. Also, there is no substantial evidence in the record that the land will not be supplied with water as required by General Statutes § 7-148 (c).

III

The commission's second claim is that the court improperly substituted its judgment with respect to a drainage plan. We disagree because, as the court found, there was no evidence that supported the commission's decision to disregard the opinion of the plaintiffs' expert with respect to drainage on the land.

"In appraising the sufficiency of this record, the court must determine only whether there was substantial evidence which reasonably supported the administrative decision, since [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . The party challenging the agency decision has the burden to show that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citation omitted; internal quotation marks omitted.) *Fanotto* v. *Inland Wetlands Commission*, 108 Conn. App. 235, 239,

947 A.2d 422, cert. granted on other grounds, 289 Conn. 908, 957 A.2d 869 (2008).

The subdivision regulations concerning drainage provide in relevant part: "Adequate storm water drainage shall be provided, and natural watercourse shall be altered or obstructed in such a way as to reduce the natural run off capacity unless substitute means of run off are provided. . . . All provisions for storm water drainage shall be subject to the approval of the Town Engineer." North Haven Subdivision Regs., § 3.6. "The subdivider shall construct and install all ditches, pipes, culverts, and other storm water drainage structures as required by the Commission and shall maintain them until the streets are accepted by the Town." Id., § 3.7. In addition to the application form, for final approval of a subdivision, "the following information shall be submitted on supplementary sheets . . . . Methods of proposed sanitary sewage, methods of storm water drainage into existing sewers or existing natural watercourses . . . ." Id., § 8.4.4.

The commission claims authority to impose those regulations under General Statutes § 7-148 (c), which provides in relevant part: "Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the Constitution and general statutes . . . (6) . . . (B) . . . (i) Lay out, construct, reconstruct, repair, maintain, operate, alter, extend and discontinue . . . drainage systems . . . (iii) Regulate the laying, location and maintenance of . . . drains . . . (iv) Prohibit and regulate the discharge of drains from roofs of buildings over or upon the sidewalks, streets or other public places of the municipality or into sanitary sewers . . . ." The commission found that the application was deficient because it did not contain drainage information, and the commission was of the opinion, given prior subdivision

applications, that there was a drainage problem on the land.

The court found the following facts. Scott Schatzlein, the town engineer, submitted a letter to the commission prior to the February 6, 2006 meeting in which he stated that the land had been before the commission "several times in the past as a complete subdivision of nine lots." Schatzlein continued, stating that "[a]lthough this current application only calls for a resubdivision into two lots, the potential for further resubdivision still remains likely. Considering that a progressive (piecemeal) type process toward full subdivision potential of the property would most likely result in the same subdivision outcome without the needed public and drainage improvements . . . all public improvements, as proposed for the aforementioned previous applications, should be included in this application." The court concluded that although Schatzlein believed that "improvements" should be included in this application because they were included in prior subdivision applications and he feared piecemeal future development, Schatzlein's belief was made "without any consideration of [drainage] problems presented by this application standing alone." The court also found that references to drainage problems presented by the prior nine lot subdivision application were irrelevant to the two lot application before the board in February, 2006. The court reasoned that any future subdivision applications would have to be approved by the commission, ultimately concluding that Schatzlein's letter failed to offer support for his belief that the application presented drainage problems.

The court assumed that expert testimony was required with respect to the question of drainage and found that Schatzlein's letter and the statements he made at the public hearing were not sufficient to provide an expert basis on which the commission could

deny the application. The court also found that nothing in the record would permit the court to conclude that the commission had sufficient expertise to form an opinion on the issue of drainage. Our Supreme Court has stated that "decision makers for an administrative body may not disregard competent expert testimony and rely, without more, on their own knowledge of 'technically sophisticated and complex' issues on which they 'have not been shown to possess expertise . . . .' *Feinson* v. *Conservation Commission*, 180 Conn. 421, 427, 429, 429 A.2d 910 (1980); see *Jaffe* v. *Dept. of Health*, 135 Conn. 339, 349–50, 64 A.2d 330 (1949) (questions that go 'beyond the field of the ordinary knowledge and expertise' of trier of fact may require expert testimony) . . . ." (Citations omitted.) *Rural Water Co.* v. *Zoning Board of Appeals*, 287 Conn. 282, 296–97, 947 A.2d 944 (2008).

The court found that the only evidence regarding drainage came from the plaintiffs' professional engineer, E. Paul Lambert, when answering a question from Vern Carlson, the head of the commission. After reciting the colloquy,[4] the court found it significant that one house would be built on lot one and that the existing house and barn on the northwest corner of the land

---

[4] In response to a question from Carlson, Lambert stated: "With regard to the runoff, the runoff from a one lot subdivision certainly is almost insignificant, particularly in view of the fact that originally this entire area at the northwest part of the parcel, when the owner purchased it, was covered with the existing house there, which is proposed to be removed at this point, plus some rather large barn facilities that certainly had a lot more impervious surfaces than a one lot subdivision does, with a house footprint that is somewhere in the range of 1800 to 2000 square feet, versus coverage on the northwest corner, that between paving that was there and the large barn structure total 6000 or 7000 square feet easily. . . . In terms of quantity? Since it represents sheet flow, I would say that it represents a significant quantity difference between what was there before, and with the reduction . . . I would say it is probably a ten flow difference, in my professional opinion." Carlson responded that he understood that "it's your professional opinion . . . ."

would be torn down. The court found that "when pressed on the fact that he had presented no runoff figures from the proposed lot one or this northwest corner area . . . Lambert made a commonsense observation that the 'footprint' on the proposed house was 1800 to 2000 square feet, while the buildings to be taken down . . . were around 1800 square feet. . . . In his professional opinion, Lambert said, there would be a ten flow difference between runoff resulting from the structures proposed to be removed and this one lot high rise. Common sense would seem to dictate the same result without the need of expert testimony."

"[A]n administrative agency is not required to believe any witness, even an expert" witness. (Internal quotation marks omitted.) *Kaeser* v. *Conservation Commission*, 20 Conn. App. 309, 316, 567 A.2d 383 (1989). In *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 156–57, 653 A.2d 798 (1995), our Supreme Court stated: "Although the commission would have been entitled to deny an application because it did not believe the expert testimony, however, the commission had the burden of showing evidence in the record to *support* its decision not to believe the experts—i.e., evidence which undermined either the experts' credibility or their ultimate conclusion." (Emphasis in original.) See R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 33.12, p. 287. In this case, we are unable to find any evidence in the record that undermined Lambert's opinion with respect to drainage, and during oral argument before us, the commission was not able to identify any such evidence. We therefore conclude that the court did not improperly substitute its judgment for that of the commission with respect to drainage.

## IV

The commission's third claim is that the court improperly substituted its judgment for that of the commission with respect to sidewalks. The court concluded

that the relevant subdivision regulations were ambiguous and that the commission's interpretation of its regulations would lead to an unreasonable result and unfairly restrict the plaintiffs' use of the land. We agree with the court.

At the March 6, 2006 meeting, a commissioner stated with respect to sidewalks that the application "showed us no sidewalks, which . . . there should be," and the commission's motion to deny the application stated, in part, that "the plan lacking showing sidewalks." On appeal to the trial court, the plaintiffs alleged that the commission misinterpreted § 4.8 of the subdivision regulations by requiring the plaintiffs' application to include sidewalks on both sides of a highway bordering the subdivision. The court agreed, finding that the commission improperly required the plaintiffs' application to identify sidewalks along 960 feet of the land bordering on King's Highway, when only one lot was proposed and no construction was to take place on lot two, as well as 960 feet of sidewalk on the opposite side of King's Highway. In reaching its conclusion that the commission improperly had denied the application on the basis of sidewalks, the court concluded that a literal construction of § 4.8 supported the commission's decision. The court also concluded, however, that § 4.8 reasonably could be construed to require sidewalks only within the subdivision, as other subsections of the "Highway Standards" of the subdivision regulations refer to streets within the subdivision.[5] The court ultimately found that the commission's interpretation of

---

[5] The court found that when "streets are discussed along with various requirements for their layout, etc., internal subdivision streets are being referred to by the regulations . . . ." (Internal quotation marks omitted.) See North Haven Subdivision Regs., §§ 4.1 ("streets in subdivision shall have free access to . . . accepted public streets"), 4.2 ("design of the subdivision shall make provisions primarily for interior streets intended to accommodate the traffic of such subdivision"), 4.3 ("intersections of interior streets . . . interior streets shall be laid out), 4.6 (cul-de-sacs) and 4.7 ("all streets in a subdivision shall be graded, constructed and surfaced as shown on the plan of subdivision").

§ 4.8 led to an unreasonable and bizarre result that unfairly restricted the plaintiffs' use of the land and, therefore, that the plaintiffs' interpretation of § 4.8 should prevail.[6]

Section 4.8 under "Highway Standards" provides: "Five foot wide, reinforced concrete sidewalks shall be installed on both sides of all streets, except where this requirement may be waived by the Commission, in its discretion, where it finds that the nature of the proposed development will result in little pedestrian traffic. Curbs shall be installed on both sides of all paved portions of streets and shall be either concrete or bituminous, at the discretion of the Commission, which discretion shall consider the existence and material of adjacent curbing and future development of the area. Five foot wide, reinforced concrete sidewalks and curbing shall be constructed on all new and existing roads within the subdivision and, with the exception of the type of material, same shall be constructed in accordance with specifications adopted by the Board of Selectmen. Sidewalks constructed on new roads may be waived by the Commission under the same standards as set forth above." North Haven Subdivision Regs., § 4.8. The pertinent language is "sidewalks shall be installed on both sides of all streets . . . ."

Our canons of statutory construction provide guidance in analyzing this issue. "The court is not bound by the legal interpretation of the ordinance by the [commission]. . . . Rather, the court determines legislative

---

[6] Inasmuch as the application did not include interior streets, the court concluded that the commission expected the plaintiffs' application to show sidewalks on both sides of King's Highway, even if the plaintiffs were going to request a waiver pursuant to § 4.8. The court concluded that a waiver request was not at issue in the appeal, stating that "[w]aiver, of course, only is relevant if the [commission's] interpretation of the regulations is correct and sidewalks on both sides of a street bordering but not within a subdivision is required." Because we conclude that the commission misconstrued and misapplied § 4.8, we agree that waiver is not an issue in the appeal.

intent from the language used in the regulations. . . . We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. . . . Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms. . . . The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms." (Citations omitted; internal quotation marks omitted.) *Northeast Parking, Inc.* v. *Planning & Zoning Commission*, 47 Conn. App. 284, 293, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). "[W]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [and] doubtful language will be construed against rather than in favor of a [restriction] . . . ." (Internal quotation marks omitted.) *Smith Bros. Woodland Management, LLC* v. *Planning & Zoning Commission*, 88 Conn. App. 79, 86, 868 A.2d 749 (2005).

We agree with the court that § 4.8 is susceptible to more than one interpretation, i.e., (1) sidewalks are required on both sides of all streets adjacent to the land and within the subdivision or (2) sidewalks are required on both sides of streets within the subdivision. Our conclusion that § 4.8 is susceptible to more than one interpretation stems from a plain reading of § 4.8 and the other regulations within the "Highway Standards" section of the town's subdivision regulations. See footnote 5. "Statutes must be interpreted to give meaning to their plain language and to provide a unified body of law." *U.S. Vision, Inc.* v. *Board of Examiners for Opticians*, 15 Conn. App. 205, 214, 545 A.2d 565 (1988). The differences between § 4.8's reference to "all streets" and the other regulations' reference to "interior

streets" and "streets in a subdivision" cannot be harmonized. Courts must presume that the legislature intended two statutes to be read together and to be construed, wherever possible, to avoid conflict between them. See *Berger* v. *Tonken*, 192 Conn. 581, 589–90, 473 A.2d 782 (1984). Moreover, if there are two possible interpretations of a statute and one alternative proves unreasonable or produces a possibility of bizarre results, the more reasonable alternative should be adopted. *Pollio* v. *Planning Commission*, 232 Conn. 44, 55, 652 A.2d 1026 (1995). The same logic applies to our reading of the applicable regulations in this case. We agree with the court that requiring the plaintiffs to construct almost 1000 feet of sidewalk on the opposite side of King's Highway from their land when there is no evidence to justify the sidewalk is an absurd result.

General Statutes § 8-25 (a) provides in relevant part: "No *subdivision of land* shall be made until a plan for such subdivision has been approved by the commission. . . . Such regulations shall provide that the *land to be subdivided* shall be of such character . . . ." (Emphasis added.) The situation here is similar to the one this court noted in *Property Group, Inc.* v. *Planning & Zoning Commission*, 29 Conn. App. 18, 21, 613 A.2d 1364 (1992) (application failed to show that property plaintiff required to improve as condition of approval of subdivision was part of land to be subdivided), aff'd, 226 Conn. 684, 628 A.2d 1277 (1993). In the present case, the map submitted with the application failed to show that the property opposite the plaintiffs' land on which the commission expected the plaintiffs to install almost 1000 feet of sidewalk was part of the land to be subdivided. See *Property Group, Inc.* v. *Planning & Zoning Commission*, supra, 226 Conn. 690. Moreover, there is no substantial evidence in the record that the property opposite the plaintiffs' land is part of the subdivision. Although it is an open question whether § 8-25

empowers zoning boards to condition approval of a subdivision application on off-site improvements; id., 692; there must be some basis in the town's regulations that justifies conditioning the approval of a subdivision application on the need for off-site improvements. Id., 691. In this case, there is nothing in the record that informs us of the need for a sidewalk on property opposite that of the land to be subdivided.[7] We agree with the court's conclusion that the most sensible reading of § 4.8 is that it is addressing streets only within the subdivision. For that reason, the commission's denial of the plaintiffs' application was unreasonable, arbitrary and illegal.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] During oral argument before the trial court, counsel for the commission represented that the commission would have granted a waiver and not required the plaintiffs to construct a sidewalk on the property the plaintiffs did not own on the opposite side of King's Highway. The court did not address counsel's representation in its memorandum of decision. The representation, a conclusion, is not evidence before the court; *Monette* v. *Monette,* 102 Conn. App. 1, 11, 924 A.2d 894 (2007); which is limited to the evidence in the return of record.