JOHN F. FEDUS ET AL. *v.* ZONING AND PLANNING COMMISSION OF THE TOWN OF COLCHESTER (AC 29350)

Bishop, Gruendel and Lavery, Js.

Argued October 10, 2008—officially released March 3, 2009

*Eric H. Rothauser*, with whom, on the brief, were *John L. Bonee III* and *Jay B. Weintraub*, for the appellants (plaintiffs).

*Matthew Ranelli*, for the appellee (named defendant).

*Lewis K. Wise*, for the appellee (defendant Colchester, LLC).

*Opinion*

LAVERY, J. The plaintiffs[1] appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant zoning and planning commission of the town of Colchester (commission) approving the site plan application of the defendant developer Colchester, LLC. On appeal, the plaintiffs claim impropriety in the court's upholding of (1) a footprint only approval for the largest building in the proposed site plan, (2) an approval of a drainage plan that does not conform to the relevant Colchester zoning regulations and (3) the commission's approval of a site plan without the permits required by the zoning regulations. Because the commission did not follow the zoning regulations regarding drain pipe material and necessary permits in approving this site plan, we reverse the judgment of the trial court.

The following facts and procedural history are relevant to our discussion of the present appeal. The developer submitted a site development plan application to the commission on February 14, 2002. The developer proposed a retail development on a 72.29 acre site

---

[1] The plaintiffs are John F. Fedus, Alyce Daggett, Rose Fedus, Mae Fedus and Steven Fedus, Jr.

located along Route 2 in Colchester. The project proposed about 253,470 square feet of retail and bank space with an anchor store (building A) that would occupy 165,174 square feet. At the time of the application, the developer did not know any of the potential tenants of the development and, therefore, sought a footprint only approval for building A so that the tenant could modify the building for its use.

After public hearings were held on June 5, 19 and 26, 2002, the commission granted site plan approval for the plan, excluding the facade of the main building, but approved its footprint. In its memorandum of decision, dated August 21, 2002, the commission explained in detail several required modifications to the plan in order to be in conformance with the regulations. This decision was directly appealed by the plaintiffs to the Superior Court, which, sua sponte, dismissed the plaintiff's appeal for defective service of process. This court granted certification, and the case was transferred to the Supreme Court pursuant to General Statutes § 51-199 and Practice Book § 65-1. In *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 900 A.2d 1 (2006), our Supreme Court reversed the judgment of the trial court and remanded the case to decide the appeal on its merits. On remand, the court affirmed the commission's granting of site plan approval and dismissed the plaintiff's appeal. This court granted certification to appeal. Additional facts will be set forth as necessary.

"A site plan is a plan filed with a zoning commission or other municipal agency or official to determine the conformity of a proposed building, use or structure with specific provisions of the zoning regulations. It is a physical plan showing the layout and design of a proposed use, including structures, parking areas and open space and their relation to adjacent uses and roads, and containing the information required by the zoning regulations for that use." (Internal quotation marks

omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 46 Conn. App. 566, 570, 700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997). "A zoning commission's authority in ruling on a site plan is limited." *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 220, 821 A.2d 269 (2003). "The agency has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference." (Internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, supra, 570. "A site plan and special permit application aid zoning agencies in determining the conformity of a proposed building or use with specific provisions of the regulations." *Smith-Groh, Inc.* v. *Planning & Zoning Commission*, 78 Conn. App. 216, 230, 826 A.2d 249 (2003). General Statutes § 8-3 (g) sets out a zoning commission's authority to act on a site plan application: "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations. . . ."

"Resolution of the plaintiffs' claim requires us to review and analyze the relevant zoning regulations. Our Supreme Court has stated that [b]ecause the interpretation of the regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Ordinarily, [appellate courts afford] deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of

the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Citation omitted; internal quotation marks omitted.) *Borrelli* v. *Zoning Board of Appeals*, 106 Conn. App. 266, 270, 941 A.2d 966 (2008). Further, "a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty." *Suffield Heights Corp.* v. *Town Planning Commission*, 144 Conn. 425, 428, 133 A.2d 612 (1957). "[O]n appeal from [the] zoning board's application of [a] regulation to [the] facts of [a] case, [the] trial court must decide whether the board correctly interpreted the regulation and applied it with reasonable discretion . . . ." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 698, 784 A.2d 354 (2001). "[C]ourts should accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Cimochowski* v. *Hartford Public Schools*, 261 Conn. 287, 296, 802 A.2d 800 (2002).

"A local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances. . . . A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words employed are to be interpreted

in their natural and usual meaning. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . The regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible. . . . [R]egulations are to be construed as a whole since particular words or sections of the regulations, considered separately, may be lacking in precision of meaning to afford a standard sufficient to sustain them." (Citations omitted; internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission,* supra, 46 Conn. App. 571.

"A commission is not at liberty to ignore its existing regulations and to treat them as invalid. See *Timber Trails Corp.* v. *Planning & Zoning Commission,* 222 Conn. 374, 387, 610 A.2d 617 (1992); *Reed* v. *Planning & Zoning Commission,* 12 Conn. App. 153, 156, 529 A.2d 1338 (1987), aff'd, 208 Conn. 431, 544 A.2d 1213 (1988). When acting in a legislative capacity, a zoning commission is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . *Parks* v. *Planning & Zoning Commission,* [178 Conn. 657, 660, 425 A.2d 100 (1979)]. In contrast, when acting in an administrative capacity, a zoning commission's more limited function is to determine whether the applicant's proposed use is one which satisfies the standards set forth in the regulations and statutes." (Internal quotation marks omitted.) *Samperi* v. *Planning & Zoning Commission,* 40 Conn. App. 840, 848, 674 A.2d 432 (1996). "An administrative agency must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. . . . Agency actions occasionally exceed these limitations, and are set aside by the courts when the action taken is within one of the following areas . . . (4) the

agency's decision did not conform with the standards in its own regulations . . . ." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 22.1, p. 649.

If zoning regulations have specific requirements for site plan approval and there is no regulation giving the zoning authority the ability to waive or substitute the requirements for given reasons, then the commission must enforce the regulations and disapprove any site plan application that does not follow the regulation.

I

The plaintiffs claim that it was illegal, arbitrary and an abuse of discretion for the commission to approve a site plan with a footprint only approval of building A because the approval did not comply with the regulations. The defendants argue that the commission had the discretion to condition its approval of the site plan upon the future approval of building A's architectural elements. We agree with the defendants.

The following facts are relevant to the plaintiffs' claim. Counsel for the developer acknowledged that it purposely left the details of building A out of the site plan because a tenant had not yet been determined, and the developer wanted to leave the design of the building up to the tenant when one was found. The developer sought for the commission to "condition the approval on the requirement of course that [the developer] come back for a secondary approval for the elements associated with the larger building. What we're asking for now is approval for basically a footprint . . . ." The commission granted the site plan application but noted that the approval was "based upon its understanding that building A will contain a single/retail commercial user where the site plan shows this" and that building A, at the time of the commission's decision, was "not approved for construction." The court found

that the site plan application lacked only the final architectural rendering of building A and that there was sufficient information for the commission to determine compliance with the regulations. Further, the court found that "[a] commission has authority to approve a site plan subject to reasonable conditions that require compliance with the zoning regulations."

The plaintiffs claim that the footprint only approval does not comply with the following regulations: "3.7.3.B. Neighborhood. The use of land, buildings and other structures, the location and bulk of buildings and other structures and site development shall be of a character so as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values and to preserve and enhance the appearance and beauty of the community. . . . 3.7.3.Q. Building Design. Buildings and other structures shall conform to the following: 3.7.3.Q.1. Exterior walls of any building that are visible from any street or any other lot shall present a finished appearance by means of materials consistent with the design of the building as a whole. 3.7.3.Q.2. No mechanical equipment shall be located on the roof of a building if visible from any street or any other lot unless such equipment is housed or screened from view in a manner consistent with the architectural design of the building. . . . 12.3.19. Class 2 structures should be in substantial design conformity with the surrounding area. Architectural elevations and photographs of the surrounding properties must be submitted for review and approval. . . . 12.5.3.H. Architectural Plans. Architectural plans, which shall include all proposed buildings, structures and signs and all existing buildings, structures, and signs proposed to be reconstructed, enlarged, extended, moved or structurally altered. Architectural plans may be in preliminary form but shall include exterior elevation drawings, exterior materials, generalized floor

plans and perspective drawings, prepared, except for drawings for signs, as may be required by law by an architect or professional engineer licensed to practice in the state of Connecticut. Three (3) copies of architectural plans shall be submitted."

In analyzing the plaintiffs' claim, it should be recognized that the elements left by the commission for a future modification request were only the architectural elements, while the location, square footage, height, parking, color scheme and landscaping were approved by the commission and are not at issue in this appeal. The defendants cite the language of § 8-3 (g) for the proposition that the commission had the discretion to approve the site plan subject to modifications and conditions where necessary. In the present case, the site plan was appropriately modified when the commission determined that parts of the plan failed to comply with the regulations. On its face, the site plan application that admittedly did not include architectural renderings for building A did not comply with § 12.5.3.H of the regulations. This is because there was no exterior elevation drawings proposed in the site plan. The commission's approval of the site plan, however, was not unreasonable, arbitrary or illegal because the commission reserved final approval over the construction of building A until a more complete architectural design could be submitted. Further, the other regulations that the plaintiffs claim were violated by the conditional approval allow the commission discretion to determine how the site plan would fit with the developments already in existence within the town of Colchester. For example, § 3.7.3.B requires that the proposed buildings be in "harmony" with others in the neighborhood, § 3.7.3.Q states that they "shall present a finished appearance," and § 12.3.19 states that "structures should be in substantial design conformity with the surrounding area." Such terms are not defined within

the regulations; therefore, we use the ordinary meanings of such terms. It is clear from the text of the regulations that the overall purpose of such regulations is to maintain the overall visual appearance of the community, while still allowing development that furthers the interests of the community. The commission did not abuse its discretion in applying these regulations to the site plan in delaying final approval for the architectural elements of building A.

II

The plaintiffs next claim that it was improper for the commission to approve the site plan when the materials proposed for the drainage pipes and the reductions of peak flow rates of water do not conform to the regulations. The defendants argue in regard to the peak flow rates of water that the commission acted lawfully and that there is no adverse impact on the plaintiffs. They do not substantially dispute that the drainage pipes do not conform to the regulations. The defendants instead argue that this claim was not included in the plaintiffs' petition for certification and therefore is not before this court. The pipe material claim was raised in the petition for certification, and we therefore review the claim and agree with the plaintiffs. On the claim regarding the peak flow rates, we agree with the defendants.

Section 12.5.4 of the zoning regulations pertains to drainage design and calculations. Section 12.5.4.G, entitled "pipe," states in relevant part that "[a]ll pipe for storm drains shall be reinforced concrete pipe (RCP), Class 4, conforming to DOT Form 815 or latest edition, and shall be approved for use by the Town Engineer. . . ." Section 12.5.4.O.2 states that "[w]hen it is determined that stormwater detention structures are required, they shall be designed so that the peak flow(s) or volume of runoff after development shall not exceed

nor be substantially less than the peak flow(s) or volume of runoff prior to development for each of the design storm events. . . ."

During the public hearings, the plaintiffs presented a memorandum from Donald T. Ballou, a professional engineer, who had examined the storm water management report presented by the developer. In his list of the areas of the developer's proposal that needed review or correction, he pointed out that under the regulations, storm piping was to be made of reinforced concrete and not the corrugated high density polyethylene pipe that was proposed. He also noted that the runoff volume was not addressed in the proposal. The developer had its professional engineer, Terrance M. Gallagher, respond. He responded that there was no change in overall water discharge and a "significant net reduction in peak flow rates for 2 Year (23.7 [percent] reduction) through 100 Year (51.7 [percent] reduction) storms at [one of the stormwater basins]." He further commented that the site engineering report "shows peak runoff rates reduced in all watersheds by significant percentages." Regarding the corrugated high density polyethylene piping, he stated that the developer would use reinforced concrete pipe if the commission or the town engineer requested it. The town engineer, Salvatore A. Tassone, in response, wrote a memorandum to the commission stating that the town had accepted the use of corrugated high density polyethylene for more than ten years.

The commission's memorandum of decision states that "[d]espite the testimony presented to it by opponents to the project and Mr. Donald T. Ballou, a professional engineer hired by one of them, the commission finds the drainage design to be in conformance with Section 12.5.4 of the zoning regulations . . . . The commission makes this finding on the basis of all of the evidence presented to it and with particular attention to

the report of the town engineer, Salvatore A. Tassone, P.E. . . . ."

The court found that "[t]he record demonstrates that the commission carefully considered the issues regarding the drainage system, giving particular regard to the town engineer's comments. The commission found 'the drainage design to be in conformance with Section 12.5.4 of the zoning regulations . . . .' Similarly, it determined that corrugated polyethylene pipe satisfied the zoning regulations' requirement of reinforced concrete pipe where the town engineer approved its use. The commission considered testimony from the engineers of [the developer], the plaintiffs and the town, and ultimately followed the recommendations of the town engineer. The court is not permitted to substitute its judgment for that of the commission when evaluating the weight of competing testimony. . . . Furthermore, the commission's interpretation of its zoning regulations regarding what constitutes a substantial reduction in the peak flow or volume of runoff is reasonable and is entitled to the court's deference. See *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 414, 898 A.2d 157 (2006) . . . ."

In creating § 12.5.4.O.2 of the regulations, the commission allotted itself reasonable discretion to review proposed drainage plans. Even though the developer's engineer uses the phrase, "significant," in relation to some eventual storm water reduction, the commission has the discretion to determine if such a reduction is "substantial" and would therefore not conform with the regulation. The commission analyzed the reports of engineers for the developer, the plaintiffs and the town and made its determination that the storm water reduction was not substantial. This was an appropriate use of its discretion.

After a review of the regulations and § 12.5.4, this court finds that the language of § 12.5.4 is clear on its

face, and there are no exceptions to this regulation or to the requirement that pipes be made from reinforced concrete. The commission was acting in an administrative capacity and was supposed to determine only the proposal's conformance with the regulations. See *Samperi* v. *Planning & Zoning Commission*, supra, 40 Conn. App. 848. In acting within its legislative capacity, the commission created this regulation and therefore bound itself to comply with it until it finds that a change is needed and then decides to amend it. The commission's decision that the drainage design conformed with this clear regulation was illegal, arbitrary and unreasonable and must, therefore, be overruled.

## III

The plaintiffs' final claim is that it was improper for the commission to approve the site plan because the developer had not obtained the permits required by the regulations. The defendants argue that it is impossible to obtain such approvals prior to local approval, and, therefore, the developer could not be required to follow the regulations.[2]

The challenged regulations state: "[§] 12.3.16: If approval from any state, local, or federal departments, offices or agencies is required, such approval shall be obtained prior to submission of the plan. Approval from Connecticut department of transportation may be preliminary. . . . [§] 12.5.3.C.12 . . . Where the proposed storm system is to be connected to an existing state of Connecticut drainage system, computations

---

[2] The defendants cite *Lurie* v. *Planning & Zoning Commission*, 160 Conn. 295, 307, 278 A.2d 799 (1971), for the proposition that zoning authorities may create conditions of approval when there is a situation in which there are permits required that ordinarily are not obtained until after zoning approval. *Lurie* and the cases that cite it have been taken out of context by the defendants. These cases specifically concern situations in which a special exception or a variance was being requested. The developers in the case at bar requested no such exceptions.

shall meet state design standards and all necessary permits shall be obtained from the State of Connecticut."

In its operations and maintenance plan appendix to the site engineering report, the developer exclaimed that it "will receive a number of permits, which may contain special conditions . . . . These permits may include the following . . . U.S. Army Corps of Engineers Wetlands Permit . . . Connecticut State Traffic Commission Certificate . . . Connecticut Department of Transportation Encroachment Permit . . . Connecticut General Permit for the Discharge of Stormwater Associated with Construction Activity . . . [and] Connecticut General Permit for the Discharge of Stormwater Associated with Commercial Activity." The commission found that applications with the United States Army Corps of Engineers and state traffic commission were pending at the time of the commission's approval.

The court noted the argument of the commission that the state traffic commission, pursuant to General Statutes § 14-311 (c), has the authority to wait for local zoning approval prior to making its decision. It then held that strict application of a rule requiring approval of the necessary permits would result in a stalemate, with no government agency willing to grant the first approval, and that in such situations it was appropriate to approve an application subject to the condition that the necessary permits be obtained.

Although it is permissible to condition the approval of a site plan on the approval of other municipal agencies; see *Blaker* v. *Planning & Zoning Commission*, 212 Conn. 471, 482, 562 A.2d 1093 (1989); it is not permissible for a commission to ignore its existing regulations. The plain language of § 12.3.16 is clear on its face, and the use of the term "shall" makes the regulation mandatory and not permissive. If there are other permits

needed, other than from the department of transportation, then a site plan applicant must secure the permits before the site plan may be approved. As discussed in part II, the commission was acting in its administrative capacity in deciding whether to grant this application, and as an administrative agency, it was limited to determining whether the site plan conformed with the existing regulations. The commission may act within its legislative capacity and amend any regulations it sees fit to amend, but when it sits as an administrative body, its authority is limited. Because at the time of the application, the developer had numerous permits to obtain for this site plan, the plan did not conform to the relevant regulation and could not have been granted.

The judgment is reversed and the case is remanded with direction to sustain the plaintiffs' appeal.

In this opinion the other judges concurred.