******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# INTERNATIONAL INVESTORS *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD ET AL.
## (AC 43035)

Prescott, Elgo and Moll, Js.

*Syllabus*

The plaintiff, an abutting property owner, appealed to this court from the judgment of the trial court sustaining in part its appeal from the decision of the defendant Town Plan and Zoning Commission of the Town of Fairfield granting extensions of the approvals of a special permit and coastal site plan review to the defendant F Co., until April, 2023. The commission had approved the special permit and coastal site plan review in April, 2006. A nonparty appealed the commission's decision to the Superior Court and an appeal from the Superior Court's judgment in that case to our Supreme Court was dismissed on April 8, 2009. In April, 2009, the Fairfield zoning regulations provided that a special permit was valid for two years, subject to any extensions, from the date of such approval and, in the case of an appeal, the two year period would commence from the date of the final judicial determination of such appeal. On February 8, 2011, the commission amended the Fairfield zoning regulations, which deleted the language providing for the two year limitation. On February 15, 2011, F Co. requested confirmation from the town that pursuant to the 2011 amendment to the Fairfield zoning regulations and a certain statute (§ 8-3 (i)), the special permit and coastal site plan review approvals granted in April, 2006, remained in effect until April 8, 2014. The town provided the requested confirmation in writing. A few years later, in March, 2018, F Co. submitted a letter to the commission requesting an extension of the special permit and coastal site plan review approvals, which the commission voted to extend until April, 2023. The plaintiff appealed from that decision to the trial court, which sustained the appeal in part, concluding that the commission's decision to extend the special permit approval was improper. The court further concluded, however, that its decision sustaining the plaintiff's appeal as to the commission's decision to extend the special permit approval did not operate to invalidate the special permit, because special permits attach to the property and run with the land and, therefore, could not be limited as to time, and the plaintiff, on the granting of certification, appealed to this court. The plaintiff claimed that the court improperly concluded that the special permit granted to F Co. could not be limited in duration because a zoning authority is empowered pursuant to statute (§ 8-2 (a)) to impose a temporal condition on a special permit and the court's reliance on the legal principle that special permits "run with the land" was misplaced. *Held* that the trial court incorrectly determined that the special permit granted to F Co. and recorded in the land records pursuant to statute (§ 8-3d) was valid indefinitely and could not be subject to a temporal condition: § 8-2 (a), which provides that special permits may be approved subject to "conditions necessary to protect the public health, safety, convenience and property values," authorizes a zoning authority to condition, by regulatory fiat, its approval of a special permit on the completion of development related to the permitted use within a set time frame as it prevents the permit holder from unduly delaying the commencement of the permitted use to a time when the surrounding circumstances may no longer support it; moreover, the fact that the legislature has chosen to set forth express time limits in some land use statutes does not prevent the imposition of temporal limits on special permits, especially in light of the explicit language in § 8-2 (a) permitting a zoning authority to subject a special permit approval to certain conditions; furthermore, the trial court misapplied the legal principle that special permits "run with the land" in concluding that special permits cannot be temporally restricted, although permits are not personal to the applicant and remain valid notwithstanding a change in the ownership of the land, a zoning authority is not prohibited from placing a temporal condition on a special

permit; accordingly, once the special permit became effective in April, 2009, F Co. had two years to complete development on the property in accordance with the Fairfield zoning regulations in effect at that time, and, because it failed to do so or request any extensions within that time frame, the special permit expired in April, 2011, and the case was remanded with direction to render judgment sustaining the plaintiff's appeal as to its claim that the special permit expired on April 8, 2011.

Argued September 21, 2020—officially released February 16, 2021

*Procedural History*

Appeal from the decision of the named defendant extending its approvals of a special permit and a coastal site plan review granted to the defendant Fairfield Commons, LLC, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Radcliffe, J.*; judgment sustaining the appeal in part, from which the plaintiff, on the granting of certification, appealed to this court. *Affirmed in part; reversed in part; judgment directed.*

*Charles J. Willinger, Jr.*, with whom, on the brief, were *Ann Marie Willinger* and *James A. Lenes*, for the appellant (plaintiff).

*James T. Baldwin*, for the appellee (named defendant).

*John F. Fallon*, for the appellee (defendant Fairfield Commons, LLC).

*Opinion*

MOLL, J. This appeal requires us to consider whether a zoning authority may condition its approval of a special permit on the completion of development attendant to the permitted use by a date certain, in effect imposing a conditional time limit on the special permit. The plaintiff, International Investors, appeals from the judgment of the trial court disposing of the plaintiff's appeal from the decision of the defendant Town Plan and Zoning Commission of the Town of Fairfield (commission) extending its approvals of a special permit and coastal site plan review granted to the defendant Fairfield Commons, LLC (Fairfield Commons).[1] After sustaining the plaintiff's appeal insofar as it challenged the commission's decision to extend the special permit approval, the court ruled that it nonetheless was not finding that the special permit had expired because, it reasoned, the special permit, once recorded in the town land records, was valid indefinitely and not subject to a condition limiting its duration. On appeal before us, the plaintiff claims that the court improperly concluded that the special permit remained valid on the basis that it could not be temporally limited. We reverse, in part, the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. Fairfield Commons owns an approximately 3.6 acre parcel of property known as 1125 Kings Highway in Fairfield (property). The plaintiff is an abutting landowner. In 2006, Fairfield Commons filed an application for a special permit to construct a 36,000 square foot retail building on the property. Fairfield Commons also submitted an application for a coastal site plan review.[2] On April 11, 2006, the commission approved the special permit and the coastal site plan review.[3] Thereafter, a nonparty to this matter appealed from the commission's decision to the Superior Court, challenging a condition of the special permit requiring the removal of an existing billboard. See *Lamar Co. of Connecticut, LLC* v. *Town Plan & Zoning Commission*, Superior Court, judicial district of Fairfield, Docket No. CV-06-4016312-S, 2008 WL 366557 (January 25, 2008) (*Lamar* action). On May 5, 2008, an appeal from the judgment rendered in the *Lamar* action was filed with this court and later transferred to our Supreme Court, which dismissed the appeal on April 8, 2009. See Connecticut Supreme Court, Docket No. SC 18204 (appeal dismissed April 8, 2009).

The Fairfield Zoning Regulations in effect on April 8, 2009 (2009 regulations)[4] contain the following relevant provisions. Section 25.8.3 of the 2009 regulations provides: "The duration of a [special permit] shall be as provided in Sections 2.23.5, 2.23.6 and 2.23.7 of the Zoning Regulations." Section 2.23.5 of the 2009 regulations in turn provides: "Approval or approval with modification shall constitute approval conditioned upon

completion of the proposed use in accordance with the Zoning Regulations within a period of two (2) years from the date of such approval." Section 2.23.6 of the 2009 regulations provides in relevant part: "(a) Upon failure to complete within such two (2) year period, the approval or approval with modification shall become null and void, unless an appeal to court is filed within such period, whereupon the two (2) year period shall commence from the date of the final judicial determination of such appeal. Three (3) extensions of such period for an additional period not to exceed one (1) year may be granted, subject to appropriate conditions and safeguards necessary to conserve the public health, safety, convenience, welfare and property values in the neighborhood. . . ."[5]

On February 8, 2011, the commission amended § 2.23 of the 2009 regulations (2011 amendment). Following the 2011 amendment, § 2.23 of the Fairfield Zoning Regulations read in its entirety: "Whenever a public hearing on any application is to be held pursuant to the requirements of the foregoing sections of the Zoning Regulations, other than the public hearing for an amendment to the Zoning Regulations, the procedure for which is set forth in Section 2.39 of the Zoning Regulations, the Commission shall proceed in accordance with the requirements of the Connecticut General Statutes." The remainder of § 2.23 as it existed in the 2009 regulations, including §§ 2.23.5 and 2.23.6, was deleted. The stated purpose of the 2011 amendment was "to repeal the language that is inconsistent with current statutory requirements. Rather than adopt statut[ory] language as part of the regulations, which may change from time to time, reference is made to the statutes." Additionally, sometime after April 8, 2009, § 25.8.3 of the 2009 regulations was amended to provide: "The duration of a [special permit] shall be as provided in the Connecticut General Statutes."

On February 15, 2011, Fairfield Commons requested confirmation from the town of Fairfield (town) that, pursuant to the 2011 amendment and General Statutes § 8-3 (i),[6] the special permit and coastal site plan review approvals granted in April, 2006, remained in effect until April 8, 2014. Thereafter, the town provided the requested confirmation in writing.[7]

On May 9, 2011, the legislature amended § 8-3 (m) to provide: "Notwithstanding the provisions of this section, any site plan approval made under this section prior to July 1, 2011, that has not expired prior to May 9, 2011,[8] except an approval made under subsection (j) of this section,[9] shall expire not less than nine years after the date of such approval and the commission may grant one or more extensions of time to complete all or part of the work in connection with such site plan, provided no approval, including all extensions, shall be valid for more than fourteen years from the

date the site plan was approved.''[10] (Footnotes added.)

Several years later, on March 29, 2018, Fairfield Commons submitted a letter to the commission requesting an extension of the special permit and coastal site plan review approvals. Fairfield Commons represented that, on an unspecified date, the commission and the office of the town attorney had confirmed that, in accordance with § 8-3 (m), the approvals were extended to April 8, 2018, subject to extensions. Pursuant to § 8-3 (m), Fairfield Commons requested an additional five year extension of the approvals to April 8, 2023. In a letter addressed to the commission dated April 6, 2018, the plaintiff opposed Fairfield Commons' request for an extension, arguing, inter alia, that the approvals had expired in April, 2011, and that the 2011 amendment had not affected the expiration date of the approvals.

On April 10, 2018, the commission held a meeting to discuss Fairfield Commons' request for an extension of the special permit and coastal site plan review approvals. The meeting was attended by commission members, alternates, and town department members, including Jim Wendt, the town's planning director. During the meeting, which was transcribed, Wendt stated that, at the time of Fairfield Commons' March 29, 2018 request for an extension of the approvals, the expiration date of the approvals was April 8, 2018, explaining that (1) on April 8, 2009, when our Supreme Court dismissed the appeal filed in the *Lamar* action, the 2009 regulations were in effect, and, thereunder, the approvals were set to expire on April 8, 2011, (2) prior to the 2011 amendment, the 2009 regulations conflicted with § 8-3 (i), which allowed up to five years, not including extensions, for the completion of work related to site plans, (3) the commission approved the 2011 amendment so that the Fairfield Zoning Regulations would be "in sync" with the General Statutes, (4) the commission intended to have the 2011 amendment apply retroactively, (5) as the approvals had been active in February, 2011, when the 2011 amendment was adopted, the 2011 amendment had operated to extend the approvals to April 8, 2014, and (6) following the amendment to § 8-3 (m) in May, 2011, the approvals were further extended to April 8, 2018. At the conclusion of the meeting, the commission voted unanimously to grant Fairfield Commons' request for an extension of the approvals to April 8, 2023.[11] In a letter dated April 12, 2018, Wendt notified Fairfield Commons of the commission's decision, and notice of the decision was published in a local newspaper on April 13, 2018.

On April 20, 2018, the plaintiff appealed from the commission's decision to the Superior Court. The plaintiff claimed on appeal that the commission improperly granted Fairfield Commons' request for an extension of the special permit and coastal site plan review approvals because the approvals had expired prior to

the commission's action. More specifically, the plaintiff asserted that (1) the 2009 regulations governed the approvals, and, in accordance therewith, the approvals had expired on April 8, 2011, (2) the 2011 amendment and § 8-3 (m) did not apply retroactively to the approvals, and (3) even assuming that they applied retroactively, the 2011 amendment and § 8-3 (m) were germane to site plans only and, thus, had no bearing on the approval of the special permit.[12] In response, Fairfield Commons, joined by the commission,[13] argued that (1) the 2011 amendment incorporated by reference § 8-3 (i) and (m), pursuant to which the approval of the coastal site plan review had been extended first to April 8, 2014 (under § 8-3 (i)) and then to April 8, 2018 (under § 8-3 (m)), (2) the coastal site plan review was inseparable from the special permit such that the extension of the coastal site plan review approval to April 8, 2018, also functioned to extend the special permit approval to April 8, 2018, and (3) Fairfield Commons had statutory authority under § 8-3 (m) to request an additional five year extension of the approvals. On October 12, 2018, the plaintiff filed a reply brief, arguing, inter alia, that special permits and site plans are separate and distinct, such that § 8-3 (i) and (m), concerning site plans only, were inapplicable to the special permit approval.

On February 14, 2019, the trial court, *Radcliffe, J.*, issued a memorandum of decision sustaining, in part, the plaintiff's appeal. After finding that the plaintiff was statutorily aggrieved as an abutting landowner of the property, the court determined that § 8-3 (i) and (m) governed site plans only, and, as a result, those statutory provisions provided no basis to extend the approval of the special permit, which the court found to be separate and distinct from the approval of the coastal site plan review. Accordingly, the court concluded that the commission's decision to extend the special permit approval was improper.

The court proceeded to clarify that its decision sustaining the plaintiff's appeal as to the commission's decision extending the special permit approval did not operate to invalidate the special permit. Citing R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015), and several Superior Court decisions, the court stated that "[s]pecial permits, like variances, attach to the property, and run with the land," and, consequently, special permits could not be "limited as to time, or personalized to any individual." In addition, observing that a zoning authority has no inherent powers but rather derives its authority strictly from statute, the court further determined that "[n]o provision of the General Statutes allows a municipal zoning commission to revoke, or place a time limit upon, a valid special permit, which has become effective pursuant to [General Statutes §] 8-3d[14] . . . . Therefore, the April 10, 2018 action of the [commission] had no impact on the special permit issued to . . . Fairfield Com-

mons . . . assuming that the special permit was otherwise effective. The only approval impacted by the action, based upon the provisions of [§] 8-3 (i) and (m) . . . is the coastal [site plan review approval]." (Footnote added.) In sum, the court concluded that "[t]he appeal of the plaintiff . . . is sustained, to the extent that it challenges the authority of the [commission] to extend the expiration date of the special permit until April 8, 2023. In sustaining the appeal, the court does not find that the special permit issued to Fairfield Commons . . . has expired, or is otherwise invalid, as a matter of law." (Emphasis omitted.)

On March 1, 2019, the plaintiff filed a petition for certification to appeal from the court's judgment, which this court granted on May 22, 2019. This appeal followed. Additional facts and procedural history will be set forth as necessary.

The plaintiff on appeal challenges the court's judgment insofar as the court concluded that the special permit granted to Fairfield Commons could not be limited in duration and, thus, remained valid (and did not require timely extension).[15] More specifically, the plaintiff claims that the court improperly concluded that the special permit, once recorded in accordance with § 8-3d, was valid in perpetuity and not subject to a temporal condition because (1) General Statutes § 8-2 (a) empowers a zoning authority to impose a temporal condition on a special permit and (2) the court's reliance on the legal principle that special permits "run with the land" was misplaced. For the reasons that follow, we agree.

At the outset, we set forth the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Villages, LLC* v. *Enfield Planning & Zoning Commission*, 149 Conn. App. 448, 456, 89 A.3d 405 (2014), appeal dismissed, 320 Conn. 89, 127 A.3d 998 (2015). This appeal does not require us to consider the propriety of the commission's decision to grant Fairfield Commons' application for a special permit. Instead, the issue before us concerns the court's legal conclusion that the special permit, once recorded in the town land records, was indefinite and not subject to a condition limiting its duration. Thus, our review is plenary.

I

We first turn to the plaintiff's claim that the trial court incorrectly determined that there was no statutory

authority enabling a zoning authority to restrict the duration of a special permit, which, in the present case, came in the form of a condition requiring the completion of development attendant to the permitted use within two years, subject to extensions. The plaintiff contends that § 8-2 (a) extended such authority to the commission. We agree.

"It is axiomatic that [a]s a creature of the state, the . . . [town . . . whether acting itself or through its planning commission] can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation. . . . In other words, in order to determine whether the [condition] in question was within the authority of the commission to [impose], we do not search for a statutory prohibition against such an [action]; rather, we must search for statutory authority for the [action]." (Citations omitted; internal quotation marks omitted.) *Moscowitz* v. *Planning & Zoning Commission*, 16 Conn. App. 303, 308, 547 A.2d 569 (1988).

Resolving the plaintiff's claim requires us to construe § 8-2 (a). "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Petrucelli* v. *Meriden*, 198 Conn. App. 838, 847–48, 234 A.3d 981 (2020).

Section 8-2 (a) provides in relevant part that zoning "regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception[16] from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any spe-

cial act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . .'' (Footnote added.)

We construe the language of § 8-2 (a) providing that special permits may be approved subject to "conditions necessary to protect the public health, safety, convenience and property values" as authorizing a zoning authority to condition, by regulatory fiat, its approval of a special permit on the completion of development related to the permitted use within a set time frame.[17] We note that "[t]he basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right in particular zoning districts, their nature is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) *St. Joseph's High School, Inc.* v. *Planning & Zoning Commission*, 176 Conn. App. 570, 586, 170 A.3d 73 (2017). The approval of a special permit on the condition that development attendant to the permitted use is finished by a date certain prevents the permit holder from unduly delaying the commencement of the permitted use to a time when the surrounding circumstances may no longer support it.[18]

The following example illustrates the utility of imposing a temporal condition on a special permit "to protect the public health, safety, convenience and property values" within a municipality. General Statutes § 8-2 (a).[19] In a particular municipality, in accordance with the zoning regulations, an individual applies for a special permit to operate a crematorium, which the zoning authority grants with no time restriction limiting the special permit. At that time, there is no other crematorium in the municipality. The individual elects to wait thirty years before constructing the crematorium. In the interim, following the necessary approvals, two other crematoriums have been built and are in operation. In this scenario, although the construction and operation of a crematorium may have been welcomed thirty years prior when no other similar use existed within the municipality, the lapse of time has diminished the need for such a use. A durational limit on the special permit granted to the individual would have prevented such a circumstance.[20]

The defendants argue that the legislature has expressly imposed durational limits with respect to other land use permits, such as inland wetlands permits; see General Statutes § 22a-42a (d) (2) and (g);[21] and thus, without an explicit time limit set forth therein, § 8-2 (a) should not be interpreted to authorize temporal limitations on special permits.[22] We are not persuaded. The defendants' argument ignores the explicit language of § 8-2 (a) permitting a zoning authority to subject

a special permit approval to "conditions necessary to protect the public health, safety, convenience and property values." General Statutes § 8-2 (a). We do not construe the legislature's choice to set forth express time limits in some land use statutes as eschewing the imposition of temporal limits on special permits. As we conclude in this opinion, a condition limiting the duration of a special permit falls within the ambit of § 8-2 (a).

In sum, we conclude that § 8-2 (a) empowers a zoning authority to impose a temporal condition on a special permit, in this instance, by requiring the completion of development attendant to the permitted use within a set time frame. Thus, the court improperly concluded that there was no statutory authority enabling a zoning authority to impose such a condition.

## II

The plaintiff next claims that the trial court improperly relied on the legal tenet that special permits "run with the land" in concluding that special permits, once recorded pursuant to § 8-3d, are valid indefinitely and cannot be temporally restricted. We agree.

In concluding that special permits, once recorded in accordance with § 8-3d,[23] are valid in perpetuity and cannot be time limited, the court relied on former Judge Robert A. Fuller's treatise on land use and several Superior Court decisions. In his treatise, Fuller opines that "[w]hen a special permit is issued by the zoning commission or other agency designated in the zoning regulations, it remains valid indefinitely since the use allowed under it is a permitted use subject to conditions in the zoning regulations. [In *N & L Associates* v. *Planning & Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. CV-04-93492-S (June 8, 2005) (39 Conn. L. Rptr. 466, 468–69)] [w]here a special exception and related site plan was granted for earth excavation and related activities, including the retail sales of gravel created by processing it as an accessory use to the commercial gravel business even though renewal of the approval was required every two years from the zoning commission, the special exception runs with the land and was not personal with the initial property owner which is confirmed by the provision in § 8-3d that special exceptions are not effective until they are recorded in the land records. A special permit runs with the land, and a limitation on it and a related site plan cannot be limited to the time of ownership of the original applicant. The agency cannot put an expiration date on and require renewal of special permits or special exceptions because that automatically would turn a permitted use into an illegal use after the time period expired." (Footnotes omitted.) 9B R. Fuller, supra, § 50:1, pp. 162–63. Fuller further opines that "[i]f the conditions of the special permit are violated, the remedy is a zoning enforcement proceeding since there is no statutory provision allowing revocation or expiration

of special permits." Id., 163.

Upon our careful review of the case law cited by the trial court and/or in Fuller's treatise, we conclude that the court misapplied the legal principle that special permits "run with the land." In those cases, the courts concluded that various land use permits "run with the land" in that they are not personal to the applicant and remain valid *notwithstanding a change in the ownership of the land.* See *Fromer* v. *Two Hundred Post Associates*, 32 Conn. App. 799, 802, 805, 631 A.2d 347 (1993) (concluding that inland wetlands permit "to conduct a regulated activity runs with the land and not with the applicant," that permit "is concerned solely with the property to be regulated, and that the change of ownership does not affect the validity of the permit"); *Madore* v. *Zoning Board of Appeals*, Superior Court, judicial district of Middlesex, Docket No. CV-11-6005648-S (August 21, 2012) (54 Conn. L. Rptr. 519, 523) (concluding that home occupation site plan permit issued to plaintiff's husband remained valid notwithstanding husband's death because permit "ran with the land, not with the applicant"); *Gozzo* v. *Zoning Commission*, Superior Court, judicial district of New Britain, Docket No. CV-07-4015865-S (July 24, 2008) (46 Conn. L. Rptr. 110, 114) (concluding that conditions imposed on special permit, including condition providing that special permit "shall pertain only to the present owner of the property and shall not run with the property," were invalid, stating, inter alia, that "[t]o the extent that [the] conditions are personal to the plaintiffs and reflect that this permit will not run with the land, they are invalid"); *Shaw* v. *Planning & Zoning Commission*, Superior Court, judicial district of Fairfield, Docket No. CV-02-395344 (July 12, 2005) (39 Conn. L. Rptr. 648, 651) (concluding that "special permit runs with the land" and, therefore, change in operator of group home on property would not invalidate special permit); *N & L Associates* v. *Planning & Zoning Commission*, supra, 39 Conn. L. Rptr. 468 (concluding that "special permit issued to [prior property owner] ran with the land and [subsequent property owner] was entitled to use it to operate its gravel excavation business"); *Beeman* v. *Planning & Zoning Commission*, Superior Court, judicial district of New Haven, Docket No. CV-99-0427275 (April 27, 2000) (27 Conn. L. Rptr. 77, 80) (concluding that special permit "run[s] with the land" and, therefore, condition voiding special permit if permit holder transferred property was invalid); *Griswold Hills of Newington Ltd. Partnership* v. *Town Plan & Zoning Commission*, Superior Court, judicial district of Hartford-New Britain, Docket No. CV-95-0705701-S (June 9, 1995) (14 Conn. L. Rptr. 405, 407) (concluding that special permit and site plan "run with the land" and, therefore, current owner of property had standing to bring mandamus action to require planning and zoning commission to finalize land use approvals

granted to previous owner of property). These cases illustrate the well settled precept that land use permits are not personal to the applicant and are not rendered void by a transfer of ownership of the property. None of these cases, however, addresses the issue of whether a zoning authority may impose a temporal condition in approving a special permit.

Put another way, there is a distinction between (a) the principle that a special permit "runs with the land" as opposed to being personal in nature to the applicant and (b) the ability of a zoning authority to place a temporal condition on a special permit. At least one Superior Court decision has recognized this distinction. In *Vanghel* v. *Planning & Zoning Commission*, Superior Court, judicial district of Windham, Docket No. CV-11-6004127-S (August 20, 2012) (54 Conn. L. Rptr. 589), the trial court upheld the denial of the plaintiff's application seeking a second renewal of his special permit on the ground that the local zoning regulations, pursuant to which special permit approvals were rendered void if improvements attendant thereto were not completed within two years, subject to renewal for "an additional period of two years," did not authorize multiple renewals. (Emphasis omitted.) Id., 592–94. In a footnote, the court considered an argument raised by the plaintiff that construing the zoning regulations to preclude multiple renewals would be "inconsistent with the principle that the permit attaches to the land and follows the title . . . ." Id., 594 n.1. The court rejected that argument, aptly observing that "[t]here is no inconsistency between the zoning rights running with the land and not with the owner, and temporal limitations on those rights. *They are different subjects.*"[24] (Emphasis added.) Id. We agree with that assessment.

In his treatise, Fuller cites *Durham Rod & Gun Club, Inc.* v. *Planning & Zoning Commission*, Superior Court, judicial district of Middlesex, Docket No. CV-94-0072189-S (November 27, 1995), *Scott* v. *Zoning Board of Appeals*, 88 App. Div. 2d 767, 451 N.Y.S.2d 499 (1982), and *Room & Board Homes & Family Care Homes, Operators & Owners* v. *Gribbs*, 67 Mich. App. 381, 241 N.W.2d 216 (1976), in positing that "[t]here is some case law in Connecticut and other states concluding that *in the absence of statutory authority*, the commission or board which grants special permits (special exceptions) cannot impose a time limit or expiration date as a condition of approval of the permit." (Emphasis added.) 9B R. Fuller, supra, § 50:1, p. 163 and n.8. As we have concluded in part I of this opinion, § 8-2 (a) authorizes the imposition of a temporal condition on a special permit. Moreover, although the parties have not cited, and our research has not revealed, any appellate case law in this state analyzing the issue of whether a special permit may be restricted in duration, a number of our Superior Courts have determined that such a condition is permissible. See, e.g., *848, LLC* v. *Zoning Board of*

*Appeals*, Superior Court, judicial district of New Haven, Docket No. CV-15-6055150-S (June 6, 2016) (62 Conn. L. Rptr. 550, 556–57) (concluding that planning and zoning commission had authority to grant special permit with condition, imposed in response to public safety concerns, that commission, along with police and fire departments, would review permit within one year); *Vanghel* v. *Planning & Zoning Commission*, supra, 54 Conn. L. Rptr. 594 n.1 (rejecting plaintiff's argument that limiting duration of special permit conflicted with legal principle that special permits "run with the land"); *Cole* v. *Planning & Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. CV-91-55617, 1994 WL 149326, *6–7 (April 4, 1994) (rejecting plaintiff's argument that amendment to zoning regulations, providing that special permits obtained to operate sawmills in residential districts expire after two years subject to renewals, was illegal), aff'd, 40 Conn. App. 501, 671 A.2d 844 (1996).

Additionally, in his treatise, in support of the proposition that, once issued, a special permit "remains valid indefinitely since the use allowed under it is a permitted use subject to conditions in the zoning regulations," Fuller cites *Cioffoletti* v. *Planning & Zoning Commission*, 24 Conn. App. 5, 584 A.2d 1200 (1991), and *East Windsor Sportsmen's Club* v. *Planning & Zoning Commission*, Superior Court, judicial district of Hartford-New Britain, Docket No. 338696 (July 10, 1989) (4 C.S.C.R. 657). 9B R. Fuller, supra, § 50:1, p. 162 and n.5. Neither case supports the conclusion that special permits cannot be temporally limited.

In *Cioffoletti*, the plaintiffs owned property on which they operated a commercial sand and gravel removal business as a valid nonconforming use. *Cioffoletti* v. *Planning & Zoning Commission*, supra, 24 Conn. App. 6. Sometime after the plaintiffs had started their business, the local planning and zoning commission amended its zoning regulations to provide that sand and gravel operations required a special permit, which could be granted for a maximum of two years, subject to an additional extension. Id., 6–7. The plaintiffs challenged the amended regulation, and the trial court held that, as applied to the plaintiffs, the amended regulation was illegal because it attempted to prohibit the plaintiffs from continuing their valid existing nonconforming use. Id., 7. On appeal, this court affirmed the trial court's judgment, stating that "[i]t is a fundamental zoning precept in Connecticut . . . that zoning regulations cannot bar uses that existed when the regulations were adopted." Id., 8. Additionally, this court observed that "assum[ing], arguendo, that the [planning and zoning commission] has the authority to regulate sand and gravel removal and if otherwise proper, the regulation in question is a lawful mechanism to control any such business started after the effective date of the regulation." Id. Thus, whether a special permit can be tempo-

rally limited was not at issue in *Cioffoletti*; rather, *Cioffoletti* was decided in accord with the well settled legal principle that zoning regulations cannot prohibit preexisting valid nonconforming uses.

In *East Windsor Sportsmen's Club*, the plaintiff submitted an application to amend its existing special permit to allow it to construct a storage shed adjacent to its shooting range. *East Windsor Sportsmen's Club* v. *Planning & Zoning Commission*, supra, 4 C.S.C.R. 658. The local zoning commission granted the application with certain conditions, including a limitation on the hours of the shooting range. Id. On appeal to the Superior Court, the plaintiff claimed, inter alia, that the zoning commission acted illegally by adding a restriction to the existing special permit. Id. The court sustained the appeal on that ground, concluding that there was nothing in the record reflecting that the existing special permit was conditioned on periodic review, that neither § 8-2 nor the local zoning regulations gave the zoning commission "authority to restrict a preexisting use of undisputed legality," and that, even assuming that the plaintiff's application could be construed as requesting an expansion of the use allowed under the special permit, there was no authority enabling the zoning commission to restrict the original permitted use. Id. Nothing in *East Windsor Sportsmen's Club* supports the proposition that, in granting a permit initially, a temporal condition cannot be imposed.

In sum, we conclude that the court incorrectly determined that the special permit granted to Fairfield Commons, once recorded, was valid indefinitely and could not be subject to a temporal condition, such as a condition requiring the completion of development attendant to the permitted use by a date certain. Thus, the court committed error in concluding that the special permit had not expired. Once the special permit became effective in 2009, Fairfield Commons had two years, subject to any additional extensions granted, to complete development on the property. Fairfield Commons failed to complete development or request any extensions of the special permit approval within that time frame, and, therefore, the special permit expired in 2011. We leave undisturbed the court's conclusion that the commission's decision extending the special permit was improper.

The judgment is reversed only with respect to the trial court's conclusion that the special permit approval granted to Fairfield Commons, LLC, had not expired, and the case is remanded with direction to render judgment sustaining the plaintiff's appeal as to that claim; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] On January 16, 2020, the commission filed a notice indicating that it was adopting the appellate brief filed by Fairfield Commons. We refer in this opinion to Fairfield Commons and the commission individually by their designated names and collectively as the defendants.

[2] Pursuant to § 2.14.1 of the Fairfield Zoning Regulations, "[a]ll buildings, uses and structures fully or partially within the coastal boundary as defined by Section 22a-94 of the Connecticut General Statutes and as delineated on the Coastal Boundary Map for the Town of Fairfield, shall be subject to the coastal site plan review requirements and procedures in Sections 22a-105 through 22a-109 of the Connecticut General Statutes."

[3] When the commission approved the special permit in 2006, the permitted use was a retail building. In 2017, the commission granted an application filed by Fairfield Commons to change the permitted use to a medical office building.

[4] Pursuant to Practice Book § 81-6, the plaintiff filed copies of (1) the 2009 regulations and (2) the Fairfield Zoning Regulations in effect on March 29, 2018. The plaintiff represents that §§ 2.23.5 and 2.23.6 of the 2009 regulations were also in effect in 2006, when Fairfield Commons' special permit and coastal site plan review applications were submitted and granted. None of the parties contends that the relevant zoning regulations in effect in 2006 varied from the 2009 regulations.

[5] Section 2.23.7 of the 2009 regulations concerned special permits required for land excavation and fill.

[6] General Statutes § 8-3 (i) provides: "In the case of any site plan approved on or after October 1, 1984, except as provided in subsection (j) of this section, all work in connection with such site plan shall be completed within five years after the approval of the plan. The certificate of approval of such site plan shall state the date on which such five-year period expires. Failure to complete all work within such five-year period shall result in automatic expiration of the approval of such site plan, except in the case of any site plan approved on or after October 1, 1989, the zoning commission or other municipal agency or official approving such site plan may grant one or more extensions of the time to complete all or part of the work in connection with the site plan provided the total extension or extensions shall not exceed ten years from the date such site plan is approved. 'Work' for purposes of this subsection means all physical improvements required by the approved plan."

[7] Fairfield Commons represents that it received the written confirmation on March 11, 2011.

[8] As enacted by the legislature, No. 11-5, § 1, of the 2011 Public Acts amended General Statutes (Rev. to 2011) § 8-3 (m) to provide in relevant part that "[n]otwithstanding the provisions of this section, any site plan approval made under this section prior to July 1, 2011, that has not expired prior to *the effective date of this section* . . . ." (Emphasis added.) In the interest of simplicity, we refer in this opinion to the current revision of the statute.

[9] General Statutes § 8-3 (j) is not germane to this matter, as it concerns site plans for projects "consisting of four hundred or more dwelling units approved on or after June 19, 1987" and "any commercial, industrial or retail project having an area equal to or greater than four hundred thousand square feet approved on or after October 1, 1988 . . . ."

[10] Prior to the amendment, General Statutes (Rev. to 2011) § 8-3 (m) provided: "Notwithstanding the provisions of this section, any site plan approval made under this section during the period from July 1, 2006, to July 1, 2009, inclusive, except an approval made under subsection (j) of this section, shall expire not less than six years after the date of such approval and the commission may grant one or more extensions of time to complete all or part of the work in connection with such site plan, provided no approval, including all extensions, shall be valid for more than eleven years from the date the site plan was approved."

[11] The commission did not provide a collective statement of the basis for its decision on the record. Prior to rendering its decision, a few members of the commission opined that the approvals had not expired in February, 2011, when the 2011 amendment had become effective, and that the 2011 amendment had functioned to extend the approvals to April 8, 2018. Under our law, such individual statements cannot be construed as a collective statement of the basis of a zoning agency's decision. See *Verrillo* v. *Zoning Board of Appeals*, 155 Conn. App. 657, 673–74, 111 A.3d 473 (2015), and cases cited therein.

[12] The plaintiff also asserted that the 2011 amendment was void because the commission had failed to comply with the notice and hearing requirements of § 8-3 (a). On September 13, 2018, after the plaintiff had filed its brief on the merits on August 24, 2018, the parties moved by stipulation to supplement the record with two notices, dated January 28, 2011, and February 2, 2011, respectively, indicating that a public hearing on the proposed amendment

had been scheduled for February 8, 2011, and with a notice reflecting that the commission's decision on the proposed amendment had been published on February 11, 2011. The plaintiff's claim challenging the validity of the 2011 amendment was not addressed by the trial court in its memorandum of decision, and the plaintiff has not attempted to pursue that claim on appeal before us.

[13] On September 27, 2018, Fairfield Commons filed its brief on the merits. On September 28, 2018, the commission filed a notice providing that it was adopting the brief filed by the "defendant, International Investors." We construe the commission's reference to "International Investors," rather than to Fairfield Commons, to be a misnomer. See also footnote 1 of this opinion.

[14] General Statutes § 8-3d provides: "No variance, special permit or special exception granted pursuant to this chapter, chapter 126 or any special act, and no special exemption granted under section 8-2g, shall be effective until a copy thereof, certified by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, containing a description of the premises to which it relates and specifying the nature of such variance, special permit, special exception or special exemption, including the zoning bylaw, ordinance or regulation which is varied in its application or to which a special exception or special exemption is granted, and stating the name of the owner of record, is recorded in the land records of the town in which such premises are located. The town clerk shall index the same in the grantor's index under the name of the then record owner and the record owner shall pay for such recording."

[15] In its appeal to the Superior Court, the plaintiff claimed that the commission committed error in extending the approvals of both the special permit and the coastal site plan review. In its memorandum of decision, the court sustained the plaintiff's appeal insofar as the plaintiff challenged the commission's decision to extend the special permit approval. Although the court did not make an express ruling as to the coastal site plan review, it is apparent that the court did not sustain the plaintiff's appeal with respect thereto. After determining that the special permit, once recorded in the town land records, was valid indefinitely and could not be time restricted, the court stated that "[t]he only approval impacted by the [commission's] action [on April 10, 2018], based upon the provisions of [§] 8-3 (i) and (m) . . . is the coastal [site plan review approval]." The court then stated that "[t]he appeal of the plaintiff . . . is sustained, *to the extent that it challenges the authority of the* [*commission*] *to extend the expiration date of the special permit until April 8, 2023*." (Emphasis altered.) In the appeal before us now, the plaintiff limits its claims to the portion of the court's judgment regarding the special permit. The plaintiff has not raised any cognizable claim on appeal concerning the coastal site plan review. We also note that neither of the defendants has filed a cross appeal.

[16] "[T]he terms 'special exception' and '[s]pecial permit' are interchangeable." *American Institute for Neuro-Integrative Development, Inc.* v. *Town Plan & Zoning Commission*, 189 Conn. App. 332, 338–39, 207 A.3d 1053 (2019).

[17] Section 8-2 (a) also provides that special permits are "subject to standards set forth in the regulations . . . ." General Statutes § 8-2 (a). We need not discuss whether this language provides an independent basis on which a zoning authority may impose a temporal condition on a special permit because we conclude that the portion of § 8-2 (a) subjecting special permits to "conditions necessary to protect the public health, safety, convenience and property values" enables a zoning authority to limit the duration of a special permit.

[18] The defendants argue that, pursuant to § 8-3 (i) and (m), site plans are temporally limited and, therefore, a zoning authority would consider changes in the surrounding circumstances if a permit holder's site plan expired and a new site plan application was submitted. We are not persuaded that a zoning authority could necessarily consider changes in the surrounding circumstances when acting on a new site plan application. "A zoning commission acts in an administrative capacity in its review of an application seeking a special permit use. . . . Conversely, when a zoning commission reviews a site plan, it is engaged in a ministerial process . . . ." (Citation omitted.) *Connecticut Health Facilities, Inc.* v. *Zoning Board of Appeals*, 29 Conn. App. 1, 6, 613 A.2d 1358 (1992). "A zoning commission's authority in ruling on a site plan is limited. . . . The agency has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference." (Citation omit-

ted; internal quotation marks omitted.) *Fedus* v. *Zoning & Planning Commission*, 112 Conn. App. 844, 848, 964 A.2d 549, cert. denied, 292 Conn. 904, 973 A.2d 104 (2009), and cert. denied, 292 Conn. 905, 973 A.2d 103 (2009). "[Section] 8-3 (g) sets out a zoning commission's authority to act on a site plan application: 'A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations. . . .' " Id. Additionally, unlike a special permit, there is no statutory mandate that a public hearing be held on a site plan application; compare General Statutes § 8-3c (b) (public hearing required on special permit application), with *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 441–42, 908 A.2d 1049 (2006) (§ 8-3 does not impose public hearing requirement on site plan application); and a site plan application is presumed to be approved if not acted upon within the time prescribed by statute. Compare General Statutes § 8-3 (g) (1) ("[a]pproval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d"), with *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, 253 Conn. 183, 194, 757 A.2d 1052 (2000) (A special permit application, even if containing a site plan, is not subject to automatic approval, as "[a]utomatic approval would negate the meaning that [our Supreme Court has] long attached to the concept of a special permit. By virtue of its unique status, a special permit for a purpose not permitted as of right necessarily must be considered by a town's planning and zoning commission."). In sum, a site plan application is not subject to the same scrutiny directed to a special permit application, and, in fact, in some instances, a site plan application will be automatically approved. Thus, the defendants' argument is unavailing.

[19] Although the parties have not cited, and our research has not revealed, any appellate case law addressing the issue of whether § 8-2 (a) empowers a zoning authority to impose a time limit on a special permit, at least one Superior Court decision has construed § 8-2 (a) to extend such authority. See *Cole* v. *Planning & Zoning Commission*, Superior Court, judicial district of Litchfield, Docket No. CV-91-55617, 1994 WL 149326, *7 (April 4, 1994) ("permitting a limited duration for a special permit seems consistent with [§] 8-2"), aff'd, 40 Conn. App. 501, 671 A.2d 844 (1996).

[20] This is but one of many possible examples demonstrating how changes in a zoning district may render a specially permitted use to be no longer suitable. By way of another example, the construction and operation of a retail plaza as a specially permitted use in a commercial area would be appropriate, but less so if development was delayed and, in the meantime, the area transformed in character such that additional traffic could not be sustained.

[21] General Statutes § 22a-42a (d) (2) provides: "Any permit issued under this section for the development of property for which an approval is required under chapter 124, 124b, 126 or 126a shall be valid until the approval granted under such chapter expires or for ten years, whichever is earlier. Any permit issued under this section for any activity for which an approval is not required under chapter 124, 124b, 126 or 126a shall be valid for not less than two years and not more than five years. Any such permit shall be renewed upon request of the permit holder unless the agency finds that there has been a substantial change in circumstances which requires a new permit application or an enforcement action has been undertaken with regard to the regulated activity for which the permit was issued, provided no permit may be valid for more than ten years."

General Statutes § 22a-42a (g) provides: "Notwithstanding the provisions of subdivision (2) of subsection (d) of this section, any permit issued under this section prior to July 1, 2011, that has not expired prior to May 9, 2011, shall expire not less than nine years after the date of such approval. Any such permit shall be renewed upon request of the permit holder unless the agency finds that there has been a substantial change in circumstances that requires a new permit application or an enforcement action has been undertaken with regard to the regulated activity for which the permit was issued, provided no such permit shall be valid for more than fourteen years."

[22] In support of their claim, the defendants also cite § 8-3 (i) and (m) (imposing time limit on site plans) and General Statutes § 8-25 (a) (imposing time limit on conditional approval of subdivision plan).

[23] Section 8-3d mandates that, to be effective, special permits must be recorded in the appropriate town land records. See footnote 14 of this opinion. An instrument is not rendered valid indefinitely merely because it is recorded. By way of example only, once recorded, a notice of lis pendens is effective for no more than fifteen years unless it is properly rerecorded

within five years prior to expiration of the fifteen year period, after which the rerecorded notice of lis pendens cannot continue in force for more than ten years. See General Statutes § 52-325e.

[24] In his treatise, Fuller states that the *Vanghel* decision "is questionable" because (1) special permits "run with the land" and (2) § 8-3 (i) allows work under an approved site plan to be completed within five years, subject to extensions. 9B R. Fuller, supra, § 50:1, p. 163. Regarding the first point, as we conclude in this opinion, the fact that special permits "run with the land" has no bearing on whether they may be temporally limited. The second point is not germane to the issue of whether a special permit may be temporally limited.

---